THIS IS A COPY

The authoritative copy of this record is held at na2.docusign.net

# FINANCING PROGRAM AGREEMENT

This Financing Program Agreement (this "**Agreement**") is made and entered into as of _____ (the "**Effective Date**") by and between **Sunlight Financial LLC** ("**Sunlight**") and All Premium Contractors Inc ("**Channel Partner**"), for themselves and their respective successors and permitted assigns.  Each of the signatories hereto is individually, a "**Party**" and collectively, the "**Parties**."

**3/23/2019  |  4:26 PM PDT**

## RECITALS

A.    Channel Partner offers marketing, sales, installation, project management, financing, system design, and equipment supply to homeowners interested in purchasing any or all of (i) residential solar energy power systems (each, a "**Solar System**"), (ii) Solar Systems plus other Non-Solar Assets (each, a "**Solar Plus Roof System**"), (iii) solar/renewable energy storage batteries (each, a "**Battery System**") and/or (iv) other Non-Solar Assets (each, an "**Other System**").  Each Solar System, Solar Plus Roof System, Battery System and any Other System is generically referred to herein as a "**System**" and collectively as "**Systems**").

B.    Sunlight and Channel Partner wish to establish a program for the financing of Solar Systems, Solar Plus Roof Systems, Battery Systems and Other Systems as the Parties may agree from time to time (the "**Program**"), to be installed by Channel Partner and installers meeting the criteria herein for participation in the Program (each, an "**Installer**" and collectively, the "**Installers**"). The financing for Solar Systems and Battery Systems will be provided as purchase-money loans and any additional financing related to Non-Solar Assets as a part of Solar Plus Roof Systems as add-on loans (each type of loan is generically referred to herein as a "**Loan**" and, collectively, the "**Loans**").  Loans related to Other Systems will either be secured or unsecured depending on the nature of Non-Solar Asset financed. Financing is provided to consumers (each, a "**Borrower**" and, collectively, the "**Borrowers**") from one or more lenders designated by Sunlight from time to time (possibly including Sunlight itself or an Affiliate of Sunlight) (each, a "**Lender**" and, collectively, the "**Lenders**").

## AGREEMENT

NOW, THEREFORE, in consideration of the above Recitals, which are a material part of this Agreement, the mutual promises and covenants set forth herein, and other good and valuable consideration, the sufficiency and receipt of which are hereby acknowledged by the Parties, the Parties, intending to be legally bound, hereby agree as follows:

1.    Definitions; Construction.

   1.1.    Defined Terms.  Capitalized terms used in this Agreement and not otherwise defined herein shall be defined as set forth in Schedule I hereto.

   1.2.    Construction.  Unless the context of this Agreement otherwise clearly requires, the following rules of construction shall apply to this Agreement: (a) references to the singular or plural include the singular, the plural, the part and the whole and the words "include," "includes" and "including" shall be deemed to be followed by the phrase "without limitation," whether or not so stated; (b) the words "hereof," "herein," "hereunder," "hereto" and similar terms in this Agreement refer to this Agreement as a whole; (c) article, section, subsection, clause, schedule and exhibit references are to this Agreement unless otherwise specified; (d) reference to any Person includes such Person's successors and assigns (to the extent permitted hereby); (e) reference to any agreement, including this

*Version 2.2*

DocuSign Envelope ID: 087A9E09-E99E-4E40-B106-9658F51E4045

THIS IS A COPY
no alternative copy of this docu is held at na2.docusign.net

Agreement together with the schedules and exhibits hereto means such agreement as amended, modified, replaced, substituted for, superseded or restated; (f) any reference to "Lender" hereunder shall be a reference to such Lender or such Lender's designee, which may include Sunlight; and (g) section titles and subtitles used in this Agreement are used for convenience only and are not to be considered in construing or interpreting this Agreement.

2.    <u>Loans</u>.

2.1.    <u>Loan Terms</u>.  The terms of Loans originated under the Program ("**Loan Terms**") shall be determined by participating Lenders and/or Sunlight from time to time based upon prevailing market conditions.  The initial Loan Terms for each type of System to be offered under the Program are set forth in <u>Exhibit A</u>, which may be amended from time to time by Sunlight in its sole discretion, including to reflect Loan Terms related to types of Systems not initially included to be financed under the Program.  Any such amendments shall be effected by Sunlight by delivery of a revised <u>Exhibit A</u> reflecting the new terms to Channel Partner.  Sunlight shall deliver notice of such amendment and such revised Exhibit to Channel Partner not less than five (5) Business Days prior to the effectiveness of any change in the Loan Terms, including applicable OID; <u>provided</u>, <u>however</u>, that in the event the one (1) month LIBOR increases by more than 0.15% over any five (5) day period, Sunlight shall have the right to make a change in Loan Terms, including with respect to OID, with less than five (5) Business Days' notice to Channel Partner.  Any changes to the Loan Terms shall not affect Loans for which the Loan Application has already been approved or is approved during such notice period, provided that such Systems are installed and completed in accordance with the funding requirements and timelines of this Agreement.

2.2.    <u>Loan Types and Loan Amounts</u>.

(a)    *Loan Types.* The Program includes: (i) Single Loans to Borrowers that provide all of the funding for a Solar System ("**Solar Only Loans**"), (ii) single Loans to Borrowers that provide all of the funding for a Solar System and additional Non-Solar Assets ("**Solar Plus Roof Loans**"), (iii) single Loans to Borrowers that provide all of the funding for a Battery System ("**Battery Only Loans**") and/or (iv) single Loans to Borrowers that provide all of the funding for other Non-Solar Assets as may be agreed from time to time between the Parties ("**Other Loans**"). All such types of Loans that are offered under the Program shall be subject to the conditions set forth in and as further described in the Program specifications set forth on <u>Exhibit B</u> with respect to such type of Loan (the "**Program Specifications**").

(b)    *Loan Amounts.* With respect to any System, no Loan shall exceed the lesser of the (i) Maximum Loan Amount or (ii) purchase price for the relevant System payable by the applicable Borrower (the "**System Purchase Price**").  The dollar amount of the Loan for which the applicable Borrower applies ("**Loan Amount**") shall be determined by such Borrower and Channel Partner.

2.3.    <u>Loan Jurisdictions</u>.  Loans under the Program will be limited to Borrowers residing in specified states (each, a "**Program State**") as described in the Program Specifications. Additional Program States may be added by agreement of the Parties and written notice of approval thereof by Sunlight to Channel Partner.

*Version 2.2*

THIS IS A COPY
The authoritative copy of this record is held at na2.docusign.net

3. <u>Loan Process</u>.

    3.1.   <u>Borrower Qualification Criteria</u>.  Sunlight has established basic underwriting criteria (the "**Borrower Qualification Criteria**") that, in addition to the applicable Lender's proprietary credit underwriting criteria, apply to each consumer applying for a Loan (each, a "**Loan Applicant**").  The Borrower Qualification Criteria are set forth in <u>Exhibit C</u>.  The Borrower Qualification Criteria shall be subject to revision from time to time in Sunlight's sole discretion. Sunlight shall provide written notice of such revision not less than five (5) Business Days prior to such change taking effect.  Such revised criteria shall not apply to any Loan applications for Systems ("**Loan Applications**") submitted prior to or during such five (5) Business Day period.  Channel Partner further acknowledges that each Lender may make adjustments to its proprietary underwriting requirements at any time.

    3.2.   <u>Credit and Loan Decisions</u>.  Sunlight will take Loan Applications through its online Platform.  After a Loan Applicant submits a Loan Application, the applicable Lender will perform a conditional underwriting of the Loan Application based on the Loan Applicant's creditworthiness for the requested Loan Amount. Sunlight will communicate the credit approval decision ("**Credit Approval**") or non-approval decision through the Platform.

    3.3.   <u>Credit and Loan Decision Timeline</u>.  Sunlight shall use reasonable efforts to provide a credit decision (Credit Approval or non-approval) for each Loan Application instantly through the Platform; <u>provided</u>, <u>however</u>, that Sunlight may require additional information from the Loan Applicant prior to determining Credit Approval or non-approval.

    3.4.   <u>Loan Agreement Execution; Courtesy Calls</u>.  Promptly after providing Credit Approval and provided that all additional documentation and other criteria of the relevant Lender have been satisfied with respect to completing a Loan with the Loan Applicant, Sunlight shall deliver the Loan Agreement and other loan documentation (the "**Loan Documentation**") to the Loan Applicant for execution by the applicable Borrower.  Channel Partner understands and agrees that following execution of the Loan Documentation, Sunlight may elect to place a call to any or all Borrowers to confirm a given Borrower's understanding of the relevant specific Loan Terms (a "**Courtesy Call**"); <u>provided</u> that any delay in placing such call by Sunlight to a given Borrower shall not delay receipt of Initial Approval from Sunlight nor payment of any agreed advances to be made by Sunlight hereunder.

4. <u>Loan Funding</u>.

    4.1.   <u>Loan Funding Timeline</u>. Channel Partner acknowledges and agrees that the Loan Terms offered to Borrowers by Sunlight are based on prevailing market conditions and require the timely completion of Project Milestones by Channel Partner and its Installers as described on <u>Exhibit D</u>.  As used herein with respect to a Project Milestone, "**complete**", "**completion**" or "**completed**" shall mean the date on with the applicable milestone criteria is met and a related Funding Request (as defined below) has been submitted through the Sunlight Platform (or, if no funding is due under the Program associated with the relevant milestone, a representation is made by Channel Partner through the Platform that the milestone criteria are met).  Channel Partner agrees that:

        (a)   the Substantial Completion milestone shall be completed by Channel Partner and its Installers no later than ninety (90) days following Initial Approval; and

*Version 2.2*

THIS IS A COPY
The authoritative Copy of this record is held at na2.docusign.net

COPY VIEW

(b)     the Final Completion milestone shall be completed by Channel Partner and its Installers no later than ninety (90) days following completion of the Substantial Completion milestone.

4.2.    <u>Funding Requests</u>.  Submission of a request for funding upon achievement of any Project Milestone in accordance with the funding schedule set forth on <u>Exhibit D</u> (each, a "**Funding Request**") shall constitute a representation and warranty by Channel Partner that (i) all information in or submitted in connection with such Funding Request, including that the applicable Project Milestones have been met, is accurate and (ii) to the knowledge of Channel Partner, no dispute exists between Channel Partner or any Installer, on the one hand, and the applicable Borrower, on the other hand, related to the System or its installation.  The criteria for each Project Milestone, as set forth on <u>Exhibit D</u>, shall be subject to amendment from time to time in Sunlight's reasonable discretion.  Any such amendments shall be provided to Channel Partner in the form of a revised <u>Exhibit D</u> at least thirty (30) days prior to taking effect and shall not apply to any Loans for which any Project Milestone has been approved prior to or during such thirty (30) day period.

4.3.    <u>Sunlight Payments to Channel Partner; Grant of Security Interest</u>.

(a)     Within seven (7) Business Days after receipt of a Funding Request and determination by Sunlight to its reasonable satisfaction that the applicable Project Milestones have in fact been met, Sunlight shall pay or cause the applicable Lender to pay to Channel Partner (i) the applicable Funding Percentage of the total Funding Amount for each Loan shown on such Funding Request that has achieved the applicable Project Milestone (each, a "**Funding Payment**") less (ii) (A) any outstanding Refund Amount and (B) any applicable default interest thereon as provided herein.

(b)     Channel Partner acknowledges that amounts disbursed by any Lender to Sunlight in respect of Loans made by such Lender under this Program for further disbursement by Sunlight to Channel Partner in accordance with this Agreement ("**Lender Disbursements**") are held by Sunlight in an account in the name of and control of Sunlight ("**Disbursement Account**").  As collateral security for the prompt, complete and indefeasible repayment when due of any Refund Amount or payment or repayment of any other amount owed by Channel Partner to Sunlight or any Lender hereunder, Channel Partner hereby grants to Sunlight and each Lender under this Program, as applicable, a pledge of and security interest in and to any right, title or interest of Channel Partner in or to any Lender Disbursements so held by Sunlight and in and to any right, title or interest Channel Partner may have in the Disbursement Account.

4.4.    <u>Project Milestone Verification</u>.  Sunlight, on behalf of each Lender, may, either directly or through independent service providers under contract with Sunlight, review and verify whether required Project Milestones related to a Funding Request and represented as complete by Channel Partner have in fact been achieved.  In the event the verification process results in a finding that not all relevant Project Milestones have been completed as represented, funding for such Project Milestones shall be halted.  If funding on account of any such Project Milestones has been made even though such Project Milestones have not been achieved ("**Installation Failure**"), the applicable Funding Payment may be deducted, in Sunlight's sole discretion, from the amount of any subsequent payments owed by Sunlight to Channel Partner in respect of Loans to finance other Systems until the earlier

*Version 2.2*

THIS IS A COPY
The authoritative Copy of this record is held at na2.docusign.net

of either (a) Sunlight is fully reimbursed or (b) the Project Milestones in issue are fully achieved. Any reversed Funding Payment will not be paid again by Sunlight unless and until Channel Partner demonstrates to Sunlight's satisfaction, in its sole discretion and at Channel Partner's sole cost, that the relevant Project Milestones required to be completed to trigger such a payment have in fact been achieved, at which point Sunlight shall promptly repay the funding payment to Channel Partner.

4.5.    <u>Loan Funding Timeline Failure</u>. If Channel Partner and its Installers do not complete the Final Completion milestone within ninety (90) days of the making of a Funding Payment to Channel Partner at achievement of the related Substantial Completion milestone ("**Final Completion Failure**"), Sunlight shall provide Channel Partner written notice of such failure and Channel Partner will refund all Funding Payments made for that System ("**Refund Amount**") within ten (10) Business Days of receipt of such notice as directed by Sunlight. Sunlight may, in its sole discretion, elect to deduct any Refund Amount so owed by Channel Partner from the amount of subsequent payments owed to Channel Partner in respect of Loans to finance other Systems and the amount owed by Sunlight or the applicable Lender in respect of such future Funding Requests hereunder shall be net of the Refund Amount or any portion thereof up to the balance of the applicable Funding Request until the full Refund Amount has been recovered by Sunlight. Post-default interest at a simple interest rate of eighteen percent (18%) per annum (or such lower rate as may be required by Applicable Law) shall be charged in the event that the full Refund Amount is not received by Sunlight within thirty (30) days of the initial written notice of the Final Completion Failure. In the event of a Final Completion Failure, Sunlight may make an immediate adjustment to OID applicable to any Loan for the delayed System.

4.6.    <u>Return of Payments</u>. If any Loan payments are made to Channel Partner by a Borrower, Channel Partner will promptly return such payments to such Borrower with instructions to forward the payments to the applicable Lender.

5.    <u>Systems</u>.

5.1.    <u>Solar System Qualification Criteria</u>. All Solar Systems shall comply with the "Qualification Criteria" set forth in <u>Exhibit B</u> (the "**Solar System Qualification Criteria**"). Sunlight may amend the Solar System Qualification Criteria from time to time in its sole discretion by delivery of a revised <u>Exhibit B</u> to Channel Partner. Sunlight shall deliver such notice to Channel Partner not less than five (5) Business Days prior to the effectiveness of any change in the Solar System Qualification Criteria. Any such changes shall not affect Loans for which the Loan Application has been approved prior to or during such notice period.

5.2.    <u>Additional System Qualification Criteria</u>. Any additional qualification criteria associated with Systems financed by Solar Plus Roof Loans, Battery Only Loans or Other Loans are, or to the extent that such Systems are not initially included but are subsequently added to the Program will be, set forth on <u>Exhibit B</u> (the "**Additional Qualification Criteria**"). Channel Partner agrees that all such Systems installed shall comply with the applicable Additional Qualification Criteria. Sunlight may amend the Additional Qualification Criteria from time to time in its sole discretion by delivery of a revised <u>Exhibit B</u> to Channel Partner. Sunlight shall deliver such notice to Channel Partner not less than five (5) Business Days prior to the effectiveness of any change in the Additional Qualification Criteria. Any such changes shall not affect Loans for which the Loan Application has been approved prior to or during such notice period.

*Version 2.2*

THIS IS A COPY

The authoritative copy of this record is held at na2.docusign.net

5.3.  <u>Pricing Determination</u>. Channel Partner shall determine System purchase pricing consistent with all Applicable Law and, in connection therewith, shall not cause the related Loan to finance such System as documented to violate Applicable Law.  Pricing determinations shall also be made by Channel Partner consistent with fair industry practices.

5.4.  <u>Channel Partner as Equipment Provider</u>.  Channel Partner will be responsible for providing all applicable materials (collectively, "**Equipment**") for all Systems financed through the Program.  All Equipment shall be purchased by Channel Partner or an Installer and all payment obligations in respect of such Equipment shall be satisfied on or prior to the date that the Substantial Completion Milestone is achieved.

5.5.  <u>Inspection</u>.  Sunlight shall have the right (acting on its own or through an agent) to inspect all Systems for compliance with the terms of this Agreement.

6.  <u>Warranties</u>.

6.1.  <u>Channel Partner Solar System Warranties</u>.

(a)  Channel Partner shall provide each Borrower, without additional cost, a five (5) year installation workmanship warranty and a five (5) year warranty against leaks caused by roof-penetration (each, a "**Warranty Agreement**"), each in form and substance acceptable to Sunlight in its sole discretion. Channel Partner shall perform and fully comply with all such Warranty Agreements.  Sunlight's requirements related to any Warranty Agreement may be modified by Sunlight upon thirty (30) days written notice thereof to Channel Partner, provided that no changes thereto shall affect Loans for which the Loan Application has been approved prior to or during such notice period.

(b)  Channel Partner shall notify Sunlight of any production, performance or other form of guarantee (each, an "**Other Solar Guarantee**") provided by it or any Installer in connection with any Solar System financed by a Loan under the Program.  Any such Other Solar Guarantee shall be in form and substance acceptable to Sunlight in its sole discretion.  Channel Partner and each applicable Installer shall perform and fully comply with all obligations under any Other Solar Guarantee.

6.2.  <u>Other Channel Partner System Warranties</u>.

(a)  In connection with any System financed by a Solar Plus Roof Loan, Battery Only Loan or Other Loan, Channel Partner shall provide each Borrower, without additional cost, the workmanship or other warranties required by Sunlight for the applicable System as set forth on <u>Exhibit F</u> hereto (each, a "**Non-Solar System Warranty**"), each in form and substance satisfactory to Sunlight in its sole discretion.  Channel Partner shall fully perform and fully comply with all Non-Solar System Warranty obligations. Sunlight's requirements related to the Non-Solar System Warranties may be modified by Sunlight upon thirty (30) days written notice thereof to Channel Partner, provided that no changes thereto shall affect Loans for which the Loan Application has been approved prior to or during such notice period.

(b)  Channel Partner shall notify Sunlight of any other warranty or guarantee (each, an "**Other Non-Solar Guarantee**") provided by it or any Installer in connection with

*Version 2.2*

THIS IS A COPY

The authoritative Copy of this record is held at na2.docusign.net

any System financed by a Solar Plus Roof Loan, Battery Only Loan or Other Loan under the Program.  Any such Other Non-Solar Guarantee shall be in form and substance acceptable to Sunlight in its sole discretion.  Channel Partner and each applicable Installer shall perform and fully comply with all Other Non-Solar Guarantee obligations.

7.    Installers.

7.1.    Enrollment of Installers.  The initial Installer qualification guidelines (the "**Installer Qualification Guidelines**") are set forth in Exhibit G.  Sunlight may amend the Installer Qualification Guidelines from time to time in its sole discretion by delivery of a revised Exhibit G to Channel Partner, including to add guidelines related to installers or systems financed by other than Solar Loans that are subsequently approved under the Program.  Sunlight shall deliver such notice to Channel Partner not less than five (5) Business Days prior to the effectiveness of any change in, or addition to, the Installer Qualification Guidelines.  No such changes shall affect Loans for which a Loan Application has already been approved or is approved during such notice period.

7.2.    Approval of Installers.  Channel Partner shall provide notice to Sunlight of any Installer that Channel Partner wishes to use to install Systems under the Program.  All such Installers shall meet the Installer Qualification Guidelines.  Sunlight will conduct such due diligence as it finds necessary or convenient with respect to any Installer requested to be used by Channel Partner for the Program.  Channel Partner shall use commercially reasonable efforts to assist Sunlight in collecting any necessary additional information.  Upon Sunlight's request from time to time, Channel Partner will provide Sunlight with updated diligence on Installers.

7.3.    Management of Installers.  Channel Partner shall ensure that each Installer at all times complies with all Applicable Law, satisfies the Installer Qualification Guidelines and installs Systems in accordance with this Agreement, the applicable Home Improvement Contracts and Prudent Industry Practices.

7.4.    Disqualification of Installers.  In the event that either Party becomes aware that an Installer no longer meets the then-current Installer Qualification Guidelines or is in violation of this Agreement, any applicable Home Improvement Contracts, Applicable Law or Prudent Industry Practices in installing Systems, such Party shall give prompt notice to the other Party.  Either Party may, at any time and in its sole discretion, terminate or temporarily rescind any Installer's ability to continue to install Systems to be financed by Loans in the Program ("**Installer Probation**").  Channel Partner shall not be permitted to submit or solicit the submission of any new Loan Applications but, provided that such rescission or termination of such Installer's status is not related to a violation of Applicable Law or willful or grossly negligent misconduct, such Installer shall be permitted to continue installations to achieve all Project Milestones with respect to any Loan Agreements which have already been executed by a Borrower.  Installer Probation may be terminated with the consent of Sunlight in Sunlight's sole discretion and such Installer shall be reinstated for participation in the Program.

7.5.    Channel Partner Payments to Installers.  Upon receipt of payments hereunder, if applicable, Channel Partner shall promptly (but, in any event, within thirty (30) days after the satisfaction of the Substantial Completion Milestone) pay each Installer the amount owed by Channel Partner to such Installer.  Channel Partner shall promptly (but, in any event, within fifteen (15) days of the Final Completion Milestone) release, and shall ensure that each Installer promptly

*Version 2.2*

THIS IS A COPY
no authoritative copy. This record is held at na2.docusign.net

(but, in any event, within fifteen (15) days of the date of the payment described in the preceding sentence) releases, all mechanics', materialmens' and other similar liens for work and materials provided in connection with any System (including any Equipment) for which a Funding Payment is made hereunder.

8. <u>Marketing of Program; Use of Trademarks and Other Intellectual Property.</u>

    8.1. <u>Marketing.</u>

      (a)   *Marketing*.  Channel Partner shall have primary responsibility for marketing the Program to Borrowers.  All marketing materials referencing Sunlight, any Lender, the Program or the availability of Loans under the Program, including, without limitation, any promotional campaigns, shall be subject to the prior written approval of Sunlight, which shall not be unreasonably withheld or delayed.  Channel Partner shall also be responsible for all lead generation, sales support, customer service (excluding loan servicing), technical support and quality assurance.

      (b)   *Branding*.  The Program will be marketed under Channel Partner's brand or, if Sunlight agrees, another brand of Channel Partner's choosing.  The Platform and consumer-facing marketing materials will use such Channel Partner-selected brand.  Notwithstanding the foregoing, the business name or brand of Sunlight, a Lender or any of their respective applicable Affiliates will be utilized on any and all documents where Sunlight determines in its reasonable discretion that such use is either required under Applicable Law or may be advisable so as to avoid any Borrower or other third party confusion regarding the origination or ownership of the Loan(s) or the creditor of such Loan(s), including without limitation, on the Loan Agreement.

      (c)   *Compliance with Law*.  Channel Partner shall be responsible for ensuring that the marketing of Systems and Loans complies with all Applicable Law, including, without limitation, Applicable Law governing door-to-door sales, if applicable, fair lending requirements, disclosure requirements and those prohibiting unfair, deceptive and abusive acts and practices.  Channel Partner shall comply with any and all policies and procedures mandated by any Lender or by Sunlight for compliance with the Truth In Lending Act, Equal Credit Opportunity Act, Fair Credit Reporting Act, and any other U.S. federal law or regulation or state law or regulation in any Program State enacted or promulgated for the protection of consumers.

      (d)   *Compliance Training*.  Channel Partner shall be responsible for ensuring that all employees and third-party sales organization (each, a "**Sales Organization**") employees involved in marketing Loans under the Program receive compliance training which shall include coverage of all compliance training materials provided by Sunlight to Channel Partner.  Channel Partner agrees to provide such training to each such person prior to such person being permitted to market Loans.

      (e)   *Disqualification of Third-Party Sales Organizations*.  In the event that either Party becomes aware that a Sales Organization used by Channel Partner in marketing Systems and, when financed, Loans to potential Borrowers is in violation of this Agreement or Applicable Law related to their marketing practices, such Party shall give prompt notice thereof to the other Party.  At Channel Partner's election or on

*Version 2.2*

THIS IS A COPY
The authoritative copy of this record is held at na2.docusign.net

direction by Sunlight, in its sole discretion, Channel Partner shall terminate or temporarily rescind such Sales Organization's ability to continue to market Systems that are financed with Loans. Such suspension or termination of services related to a Sales Organization may be discontinued and such Sales Organization reinstated for participation in the Program with the consent of Sunlight, to be made in Sunlight's sole discretion.

8.2.   Use of Sunlight Trademarks by Channel Partner.

(a)   Channel Partner shall use any name, trademark, graphic or symbol identifying any Sunlight (the "**Sunlight Trademarks**") or any name, trademark, graphic or symbol identifying any Lender (the "**Lender Trademarks**") solely as permitted by or in compliance with Section 8.1(b) or as permitted by Sunlight in writing from time to time. Unless Channel Partner obtains Sunlight's prior written approval, Channel Partner shall not combine any of the Sunlight Trademarks or Lender Trademarks with any other trademark, word, symbol, letter, design or mark.

(b)   Subject to the terms and conditions of this Agreement, Sunlight grants to Channel Partner, and Channel Partner accepts, a non-exclusive, non-transferable, non-sublicensable license during the term of this Agreement to use the Sunlight Trademarks, solely in connection with the Program and subject to the requirements of sub-clause (a) above.

(c)   Sunlight shall have the right to monitor the quality of Channel Partner uses of Sunlight Trademarks and to object to any use thereof including, without limitation, on the grounds that such use is damaging to or dilutive of the value of, or reputation associated with, any Sunlight Trademark(s) or damaging to or dilutive of the reputation of Sunlight or its products and services. Sunlight shall have the right, on behalf of Lender, to monitor the quality of Channel Partner uses of any Lender Trademarks and to object to any use including, without limitation, on the grounds that such use is damaging to or dilutive of the value of, or reputation associated with, such Lender Trademark(s) or damaging to or dilutive of the reputation of Lender or its products and services. Channel Partner shall undertake such other steps as Sunlight may reasonably request to assist Sunlight in monitoring the quality of Channel Partner uses of the Sunlight Trademarks and/or any Lender Trademarks. Channel Partner agrees to not use the Sunlight Trademarks or any Lender Trademarks in any manner that dilutes the value of such marks or damages the reputation for quality inherent in such marks or damages the reputation of Sunlight or of any Lender, as the case may be. To the extent Sunlight objects to any use of the Sunlight Trademarks or any Lender Trademarks, in addition to any other remedies available to Sunlight or Lender hereunder or at law, Channel Partner agrees to immediately stop and forego future use of the relevant mark(s) other than as may be specifically agreed to in writing by Sunlight.

(d)   Channel Partner acknowledges and agrees that it has no interest in the Sunlight Trademarks or any Lender Trademarks other than as granted under this Agreement, and that Sunlight and/or Lender will remain the sole and exclusive owner of all right, title and interest in the Sunlight Trademarks. Channel Partner acknowledges and agrees that Channel Partner's use of the Sunlight Trademarks or of any Lender Trademarks, and any goodwill in the Sunlight Trademarks or any Lender Trademarks resulting from Channel Partner's use, will inure solely to the

*Version 2.2*

THIS IS A COPY
no authoritative copy the record is held at na2.docusign.net

benefit of Sunlight or such Lender, as applicable, and will not create any right, title or interest for Channel Partner in such marks.  Channel Partner shall not contest, oppose or challenge Sunlight's ownership of the Sunlight Trademarks or any Lender's ownership of the applicable Lender Trademarks.

9. <u>Covenants and Agreements of the Parties Related to Operation of the Program.</u>

9.1. <u>Sunlight's Obligations.</u>

(a) *Loan Agreements.* Sunlight shall provide form Loan Agreements for each type of Loan offered in the Program.  Sunlight shall be responsible for the compliance of Loan Agreement forms with all Applicable Law.

(b) *Sales Training.* Sunlight will provide mandatory training sessions to Channel Partner and its sales representatives including, without limitation, training addressing product sales and marketing and potential legal compliance issues.  Training sessions with Channel Partner may be done remotely via webex.

(c) *Borrower Servicing and Underwriting.* Sunlight or its designee, will be solely responsible for loan servicing, including billing, payment collection and processing, default management and recovery. Sunlight will perform such services in the name of Sunlight or the Lenders, and may take any action or exercise any remedy available under Applicable Law and the terms of the Loan Agreement with respect to any Loan in its sole discretion.  Sunlight shall also be responsible for providing services related to underwriting Borrowers, including, as needed, conducting voice-recorded customer or Borrower verification phone calls, and obtaining unconditional lien waivers.

(d) *Covenants.*  During the Loan Origination Period, Sunlight shall use commercially reasonable efforts to keep a Lender(s) committed to the Program to ensure uninterrupted availability of Loans to Channel Partner's qualified Borrowers.

9.2. <u>Channel Partner's Obligations.</u>

(a) *Home Improvement Contract.*  All form home improvement contracts used by Channel Partner in any Program State (each, a "**Home Improvement Contract**") and related documentation, including without limitation any proposal if not included in the Home Improvement Contract, shall be provided to Sunlight in advance of utilization and shall be in a form satisfactory to Sunlight.  Channel Partner shall be responsible for the compliance of the Home Improvement Contract and related documentation with Applicable Law and local public utility requirements, including, without limitation, Applicable Law governing home improvement contracting door-to-door sales, if applicable, truth in lending disclosure requirements and those prohibiting unfair, deceptive and abusive acts and practices.

(b) *Documentation Management.*  For each System underlying a Loan under the Program, Channel Partner shall maintain throughout the life of any applicable loan and for a two (2) year period thereafter an electronic storage platform with electronic copies of the (i) Home Improvement Contract, (ii) Warranty Agreements (if not included in the Home Improvement Contract), (iii) proposal (if not included in the Home Improvement Contract), (iv) final design documents, (v) all

*Version 2.2*

DocuSign Envelope ID: 097A9E0C-539E-4F46-B106-A068F11E404B
THIS IS A COPY
no authoritative copies this record is held at na2.docusign.net

applications for permits or other authorizations made with, and permits or other authorizations for construction and operation of the System issued by, any Governmental Authority, (vi) interconnection or "permission to operate" letter or similar documentation from the local utility, if applicable, (vii) conditional lien waivers from equipment vendors, Channel Partner and any applicable Installer or subcontractor, and (viii) final, unconditional lien waivers. Channel Partner shall provide access to these documents electronically to Sunlight and any Lender participating in the Program promptly on request.

(c)     *Installation Activities.* Channel Partner will satisfy the Installer Qualification Guidelines with respect to its own installation work and install Systems in accordance with applicable Home Improvement Contracts and Prudent Industry Practices. Channel Partner will ensure that all liens on the applicable property in favor of a homeowners' association or similar organization as a result of or in connection with the installation of any System shall be immediately released and, if such lien is in existence prior to the time when a Funding Payment is due and payable hereunder, such lien shall be released prior to the making of such Funding Payment. All Battery Systems financed as a part of the Program will be installed by Channel Partner in a manner consistent with the requirements of Internal Revenue Code Section 25D(d)(2).

(d)     *Engineering, Procurement and Construction.* Channel Partner or, with the prior written consent of Sunlight in its sole discretion, an Installer, shall be responsible, and shall be liable as the general contractor, for all System engineering, procurement and construction activities. Channel Partner will, or will cause any so approved Installer to, select Equipment based on the criteria set forth in this Agreement. Channel Partner will conduct periodic audits of System construction, whether such installation is performed by Channel Partner or an Installer, and will provide Sunlight with results of such audits upon Sunlight's request.

(e)     *Data Monitoring of Solar Systems.* Channel Partner will install a power meter and monitoring software on all installed Solar Systems financed under the Program. Channel Partner will provide Sunlight with access to the monitoring platform and software during the initial setup and will not intentionally interrupt access. Channel Partner will not be held liable for the lack of monitoring data based on a Borrower either not paying for continued cellular monitoring beyond five (5) years or not providing internet for the monitoring service. Channel Partner understands and agrees that Sunlight shall obtain the right from each Borrower in the Loan Agreement to have access to Solar System monitoring, to utilize any remote shutdown capabilities, and to access the property to manually shutdown, or exercise other remedies as related to, the applicable Solar System.

(f)     *Solar System Performance.* Channel Partner shall provide Sunlight with all information, reports and documents that Sunlight may reasonably request with respect to the performance of, or other matters related to, Systems financed by Loans made under the Program. Channel Partner agrees that it shall not, and shall cause each of its Installers, Sales Organizations and their respective agents, representatives and employees to not, make any statements with respect to a System's performance except for those statements in marketing and disclosure materials that have been approved by Sunlight in writing.

*Version 2.2*

THIS IS A COPY
no authoritative copy of the record is held at na2.docusign.net

(g)     *Non-Solar System Performance and Reporting.*   Channel Partner and Sunlight shall mutually agree on performance and other data monitoring requirements as it relates to any System financed under the Program that is not a Solar System.

(h)     *Audits.*   Channel Partner shall allow Sunlight, any Lender participating in the Program and any Governmental Authority regulating or overseeing Sunlight or such Lender to audit Channel Partner's compliance with Applicable Law and/or this Agreement at least once per calendar year and at such additional times and in such form as reasonably requested by Sunlight or Lender, or as and when requested by any Governmental Authority, <u>provided</u>, that (i) any audit shall occur during normal business hours and that Lender and/or Sunlight shall use reasonable commercial efforts to minimize any impact of such audit on Channel Partner's business operations and (ii) the cost of any such audit shall be the sole responsibility of Sunlight and/or the Lender.

(i)     *Reporting*.   Channel Partner understands and agrees that Sunlight will perform annual diligence on Channel Partner and, in connection therewith, Channel Partner agrees to promptly provide to Sunlight annual financial statements, references and other materials as Sunlight shall reasonably request.   Additionally, Channel Partner shall promptly provide Sunlight with written notice of any material corporate events, including mergers, stock sales, changes in control, business dispositions and acquisitions, incurrence of any additional material debt assumed by Channel Partner or other event which has or could reasonably be expected to have a material and adverse effect on the business, operations or financial condition of Channel Partner or is reasonably likely to have a material and adverse impact on (i) Channel Partner's ability to perform under this Agreement, the Warranty Agreements, or any Non-Solar System Warranties, other Solar Guarantees or Non-Solar Guarantees, or (ii) such Channel Partner's relationship with Sunlight hereunder; provided that Sunlight hereby agrees that the provision of such information, if not public at the time of disclosure thereof to Sunlight, shall be Confidential Information and subject to the obligations of Recipient set forth therein.

(j)     *Form Amendments.*   Channel Partner shall not, and shall not cause or permit its agents, representatives, employees and Installers to, amend, modify or revise any form of Loan Application or Loan Agreement provided by Sunlight, unless Sunlight has approved such amendment, modification or revision in writing.

(k)     *Solar System Description.*   The description of each Solar System set forth in the applicable Loan Agreement is true and correct and no Borrower will have any defense, recoupment, setoff or counterclaims to the payment of the obligations evidenced by any Loan.

(l)     *Disclosure.*   Channel Partner has not knowingly failed to communicate any material information relating to any Loan, the Solar System and/or the sale and installation thereof, or any document provided to the applicable Lender.

(m)     *Other Documents*.   Channel Partner has not signed or entered into any other document with any Borrower pertaining specifically to a Loan other than the Loan Documentation provided by Channel Partner to the applicable Lender.

(n)     *Lien Releases.*   Channel Partner promptly (but, in any event, within fifteen (15) days of the Final Completion Milestone) release, and shall ensure that each of its

*Version 2.2*

THIS IS A COPY
no authoritative copy of the record is held at na2.docusign.net

subcontractors and equipment vendors promptly (but, in any event, within fifteen (15) days of the Final Completion Milestone) releases, all mechanics', materialmens' and other similar liens and encumbrances for work and materials provided in connection with any System (including any Equipment) for which a Funding Payment is made hereunder.

(o)     *Sales Discussions in English*.  Channel Partner shall, and Channel Partner shall ensure that each of its employees, subcontractors and Installers shall, conduct all discussions with each Borrower, prospective Borrower and Loan Applicant in English only.

(p)     *Ownership of Borrowers and Loan Applicants*.  Channel Partner understands and agrees that each Borrower, each prospective Borrower and each Loan Applicant shall be deemed to be a mutual customer of both Channel Partner and Sunlight.

9.3.    <u>Mutual Covenants and Agreements of the Parties</u>.

(a)     *Collaboration.*  Sunlight and Channel Partner will use commercially reasonable efforts to integrate their respective processes and technology platforms to facilitate Loan Applications and origination.

(b)     *Subcontracting.*  Either Party shall have the right to use third party subcontractors in the performance of its roles under the Program, provided that the use of such subcontractor shall not absolve such Party of any of its obligations hereunder.

(c)     *Compliance*.  Each Party shall at all times conduct its business in connection with the Program in compliance with all Applicable Law and, as applicable, Prudent Industry Practices, including, without limitation, complying with any and all applicable state and local licensing requirements.

(d)     *Non-Discrimination*.  Without limiting the generality of any other provision hereof, each Party shall, and shall cause its agents, representatives, employees and subcontractor to at all times act in compliance with the Equal Credit Opportunity Act and Regulation B thereunder and shall not discourage Loan Applications on the basis of any prohibited factor referenced therein.

(e)     *Acts and Omissions*.  Neither Party shall do or omit to do any act, which act or omission could reasonably result in harm to, or call into question the good name and reputation of, the other Party, or which may otherwise have an adverse effect on the goodwill of the other Party's business; nor shall such Party allow any such act or omission to occur where the power to prevent such act or omission was within the reasonable control of such Party.

(f)     *Non-Exclusive Relationship of the Parties*.  Each Party further agrees that the relationship of the Parties will be non-exclusive, and each Party may freely contract with other providers of loans to finance solar systems and related products or other installers of solar systems and related products, as the case may be.

10.     <u>Representations and Warranties</u>.

*Version 2.2*

THIS IS A COPY
No authoritative copy of this record is held at na2.docusign.net

10.1.   <u>Sunlight's Representations and Warranties</u>.  Sunlight hereby represents and warrants to Channel Partner as of the Effective Date and as of each day during the term of this Agreement:

(a)   *Existence and Organizational Power; Compliance with Organizational Documents*.  Sunlight (i) is duly formed, validly existing and in good standing under the laws of the State of Delaware, (ii) is duly qualified as a foreign limited liability company and is in good standing in each other jurisdiction where its ownership or lease of property or the conduct of the Program requires such qualification, except where the failure to be so qualified could not reasonably be expected to have a material adverse effect on Sunlight or the Program, (iii) has the requisite organizational power and authority to encumber and operate its properties, and (iv) has all organizational powers necessary for the conduct of the Program as now conducted or as contemplated herein.

(b)   *Governmental Authority Approvals, Compliance with Laws and Compliance with Agreements with Third Parties*.  Sunlight possesses in full force and effect all Governmental Authority approvals necessary for its activities in the conduct of the Program and is in compliance with all provisions of Applicable Law as applicable to the Program, except where the failure to do so could not reasonably be expected to have a material adverse effect on Sunlight or the Program.  Sunlight is not in breach of or in default under, or with respect to, any contract, agreement, lease or other instrument to which it is a party, or by which any of its property is bound or affected, except where such breach or default could not reasonably be expected to have a material adverse effect on Sunlight or the Program.

(c)   *Organizational and Governmental Authority Approvals; No Contravention*.  The execution, delivery and performance by Sunlight of this Agreement, and the consummation of the transactions contemplated to occur hereunder: (i) are within its organizational powers and have been duly authorized by all necessary organizational action; (ii) require no Governmental Authority approval other than (A) such filings as have been made and are in full force and effect or will be made in a particular state before the Program commences activities in such state, or (B) approvals which if not obtained could not reasonably be expected to have a material adverse effect on Sunlight or the Program; (iii) do not contravene, or constitute a default under (A) the organizational documents of Sunlight, (B) any provision of Applicable Law, the violation of which could reasonably be expected to have a material adverse effect on Sunlight or the Program, or (C) any agreement, judgment, injunction, order, decree or other instrument binding upon Sunlight, except where the violation could not reasonably be expected to have a material adverse effect on Sunlight or the Program; and (iv) do not result in the creation or imposition of any lien on any asset of Sunlight, except where such lien could not reasonably be expected to have a material adverse effect on Sunlight or the Program.  Sunlight is not, and has not in the past five (5) years been, subject to any agreement, understanding, consent or order with any Governmental Authority, court or self-regulatory trade or professional organization that would prevent its consummation or performance of this Agreement.

(d)   *Binding Effect*. This Agreement constitutes a valid and binding agreement of Sunlight, enforceable in accordance with its terms, subject to (i) the effect of any applicable bankruptcy, fraudulent transfer, moratorium, insolvency, reorganization

*Version 2.2*

DocuSign Envelope ID: 097A9E0C-599E-4F46-B100-A068F11E404B

THIS IS A COPY
no authoritative copy of this record is held at na2.docusign.net

or other similar laws affecting the rights of creditors generally, (ii) the effect of general principles of equity, whether applied by a court of equity or law, and (iii) considerations of public policy.

(e) *No Litigation*. There is no material action, suit, proceeding or investigation pending or, to its knowledge, currently threatened against Sunlight or any of its Affiliates which could reasonably be expected to affect Sunlight's ability to perform its obligations under this Agreement or otherwise in connection with the Program and which Sunlight has not disclosed to Channel Partner in writing.

10.2.  <u>Channel Partner's Representations and Warranties</u>.  Channel Partner hereby represents and warrants to Sunlight as of the Effective Date and as of each day during the term of this Agreement:

(a) *Existence and Organizational Power; Compliance with Organizational Documents*.  Channel Partner (i) is duly formed, validly existing and in good standing under the laws of the state of its incorporation or formation, (ii) is duly qualified as a foreign corporation or limited liability company and is in good standing in each other jurisdiction where its ownership or lease of property or the conduct of the Program requires such qualification, except where the failure to be so qualified could not reasonably be expected to have a material adverse effect on Channel Partner or the Program, (iii) has the requisite organizational power and authority to encumber and operate its properties, and (iv) has all organizational powers necessary for the conduct of the Program as now conducted or as contemplated herein.

(b) *Governmental Authority Approvals, Compliance with Laws and Compliance with Agreements with Third Parties*. Channel Partner possesses in full force and effect all Governmental Authority approvals necessary for its activities in the conduct of the Program and is in compliance with all provisions of Applicable Law as applicable to the Program, except where the failure to do so could not reasonably be expected to have a material adverse effect on Channel Partner or the Program. Channel Partner is not in breach of or in default under, or with respect to, any contract, agreement, lease or other instrument to which it is a party, or by which any of its property is bound or affected, except where such breach or default could not reasonably be expected to have a material adverse effect on Channel Partner or the Program.

(c) *Organizational and Governmental Authority Approvals; No Contravention*.  The execution, delivery and performance by Channel Partner of this Agreement, and the consummation of the transactions contemplated to occur hereunder: (i) are within its organizational powers and have been duly authorized by all necessary organizational action; (ii) require no Governmental Authority approval other than (A) such filings as have been made and are in full force and effect or will be made in a particular state before the Program commences activities in such state, or (B) approvals which if not obtained could not reasonably be expected to have a material adverse effect on Channel Partner or the Program; (iii) do not contravene, or constitute a default under (A) the organizational documents of Channel Partner, (B) any provision of Applicable Law, the violation of which could reasonably be expected to have a material adverse effect on Channel Partner or the Program, or (C) any agreement, judgment, injunction, order, decree or other instrument binding

*Version 2.2*

DocuSign Envelope ID: 097A9E0C-539E-4F46-B106-A068F11E404B
THIS IS A COPY
No authoritative copy of this record is held at na2.docusign.net

upon Channel Partner, except where the violation could not reasonably be expected to have a material adverse effect on Channel Partner or the Program; and (iv) do not result in the creation or imposition of any lien on any asset of Channel Partner, except where such lien could not reasonably be expected to have a material adverse effect on Channel Partner or the Program.  Channel Partner is not, and has not in the past five (5) years been, subject to any agreement, understanding, consent or order with any Governmental Authority, court or self-regulatory trade or professional organization that would prevent its consummation or performance of this Agreement.

(d)     *Binding Effect.* This Agreement constitutes a valid and binding agreement of Channel Partner, enforceable in accordance with its terms, subject to (i) the effect of any applicable bankruptcy, fraudulent transfer, moratorium, insolvency, reorganization or other similar laws affecting the rights of creditors generally, (ii) the effect of general principles of equity, whether applied by a court of equity or law, and (iii) considerations of public policy.

(e)     *No Litigation.*   There is no material action, suit, proceeding or investigation pending or, to its knowledge, currently threatened against Channel Partner or any of its Affiliates which could reasonably be expected to affect Channel Partner's ability to perform its obligations under this Agreement or otherwise in connection with the Program and which Channel Partner has not disclosed to Sunlight in writing.

(f)     *No Fraud.* No employee or representative of Channel Partner, nor any Installer, has engaged in any fraudulent conduct, made any material misrepresentation or committed any other wrongful act in connection with any Loans or installation of any Systems or, as of the date of origination or funding of any Loan, knows of any fraud, material misrepresentation or wrongful act of the Borrower(s) in connection with such Loan.

11.     <u>Financial Guaranty of Certain Delinquent or Defaulted Loans</u>.

11.1.    <u>Channel Partner Guaranty</u>.   Channel Partner acknowledges that certain actions or omissions to act on the part of Channel Partner or any applicable Installer or Sales Organization may result in actual or threatened delinquencies or defaults in payment by Borrowers in respect of Loans originated under the Program.   Accordingly, Channel Partner agrees that in the event Sunlight or any Lender hereunder (a) delivers a written notice to Channel Partner stating that a Borrower of a Loan originated under this Program has either (i) notified Sunlight or Lender, as the case may be, that such Borrower intends to not pay or (ii) elected to not pay amounts due in respect of the applicable Loan because Channel Partner or any applicable Installer or Sales Organization has failed to perform a material obligation of Channel Partner or such Installer or Sales Organization under the applicable Home Improvement Contract, Warranty Agreement or other guarantee or agreement between such Borrower and Channel Partner or Installer or Sales Organization, as the case may be, related to the applicable System and (b) Channel Partner has not cured such failure to perform within thirty (30) days of receipt of such notice, Channel Partner hereby guarantees to the applicable Lender full recovery of the principal amount of such Loan and all interest payable thereon, when due, together with all expenses of Lender incurred in connection with enforcing any such Loan for this guaranty.  Any such payments shall be made within ten (10) Business Days of the date when due.

*Version 2.2*

DocuSign Envelope ID: 097A9E0C-599E-4F46-B109-A058F11E404B

THIS IS A COPY
The authoritative copy of this record is held at na2.docusign.net

12.  <u>Term and Termination; Remedies</u>.

12.1.  <u>Term</u>.  Unless terminated earlier in accordance with <u>Section 12.2</u>, this Agreement shall commence as of the Effective Date and shall continue for one (1) year (the "**Loan Origination Period**").  The Loan Origination Period will automatically extend for successive one (1) year periods (each, a "**Renewal Period**") unless either Party gives written notice of its intention not to renew at least sixty (60) days prior to the last date of the initial Loan Origination Period or any Renewal Period, as applicable.

12.2.  <u>Termination</u>.  The Agreement may terminate in the following circumstances:

(a)  *Material Breach*.  In the event of a material breach by either Party of this Agreement, the non-breaching Party may terminate the Loan Origination Period upon thirty (30) days prior written notice thereof to the breaching Party, provided that, in the event the material breach is of a nature that cannot be cured within such thirty (30) day period, the non-breaching Party may terminate the Loan Origination Period immediately.

(b)  *Fraud, Willful Misconduct; Gross Negligence*.  The foregoing notwithstanding, in the event a material breach results from the fraud, willful misconduct or gross negligence of a Party in performance of its obligations hereunder, the non-breaching Party may terminate the Loan Origination Period effective immediately upon delivery of written notice thereof to the other Party.

(c)  *Bankruptcy or Insolvency*.  This Agreement shall terminate automatically if any Party files a petition in bankruptcy or is adjudicated bankrupt or insolvent, or makes an assignment for the benefit of creditors, or an arrangement pursuant to any bankruptcy or insolvency law, or discontinues or dissolves its business, or if a receiver is appointed for such Party or for such Party's business and such event is not discharged within thirty (30) days of such appointment.

(d)  *Lack of Funding by Lender*.  Channel Partner may terminate this Agreement in the event that a participating Lender under the Program has failed to fund any Loan, for which a Loan Agreement has been executed, for more than thirty (30) calendar days after written notice has been delivered by Channel Partner to Sunlight and Lender after the respective funding due date. Such failure to fund may be cured by Sunlight, in the event that Sunlight or another Lender executes a Loan Agreement and funds the Loan within thirty (30) days of delivery of the notice described in this <u>Section 12.2(d)</u> regarding such failure.

(e)  *Termination for Convenience*.  Either Party may terminate the Loan Origination Period effective upon sixty (60) days' prior written notice to the other Party.

12.3.  <u>Effect of Termination; Remedies</u>.

(a)  Unless otherwise expressly set forth herein, upon expiration or termination of the Loan Origination Period pursuant to subclauses (a), (b) or (c) of <u>Section 12.2</u>, the Parties shall have no further rights or obligations under this Agreement including, at the option of Sunlight in the event Channel Partner is the breaching Party, in connection with the approval or funding of Loan Applications submitted through the Platform prior to delivery of the notice of termination ("**Pipeline Loans**"); provided that, in the event Sunlight determines to proceed with processing

*Version 2.2*

THIS IS A COPY
no authorative copies this record is held at na2.docusign.net

outstanding Loan Applications and unfunded Loans, the rights and obligations of the Parties in respect of the applicable Borrowers and such Loan Applications and Loans, as the case may be, shall not be affected by the termination of the Loan Origination Period.

(b) Channel Partner's covenants with respect to Systems for which a Loan is outstanding at expiration or termination of this Agreement and any provision(s) of this Agreement that expressly or by implication comes into or remains in full force following the termination or expiration of this Agreement shall survive the termination or expiration of this Agreement.

(c) For the avoidance of doubt, Sections 12, 13, 15 and 16 of this Agreement shall survive the termination or expiration of this Agreement.

12.4. <u>Additional Remedies on Breach by or Termination for Convenience by Channel Partner</u>. Upon any material breach of this Agreement by Channel Partner (including, without limitation, any failure to repay when due any prepayments made to Channel Partner by Sunlight or any Affiliate of Sunlight, with the entity making such prepayment referred to as the "**Advancing Party**"), in addition to any rights set forth above or elsewhere in this Agreement, each of Sunlight and the Advancing Party shall have the following rights (the "**Rights**"): (i) notwithstanding <u>Section 4.5</u> hereof, to require immediate mandatory settlement of prepayments; (ii) to withhold or cause to be withheld any additional Funding Payments; and (iii) to take over installation of Systems for which partial funding has been made, together with and including the related Home Improvement Contract rights, if Sunlight or Advancing Party determines, in its reasonable judgment, that Channel Partner is unable to complete installation in a timely manner. Advancing Party is an intended third-party beneficiary of this <u>Section 12.4</u> without the need for a formal assignment. Sunlight and Advancing Party may assign the Rights, including to any financing source of Sunlight or any Affiliate, as collateral security or otherwise, whereupon the Rights may be exercised by such assignee.

13. <u>Indemnification, Limitation of Liability and Damages</u>.

13.1. <u>General</u>. Each Party (the "**Indemnifying Party**") shall indemnify the other Party, its shareholders, officers, directors, agents, employees, assignees and their respective Affiliates and, with respect to Sunlight, the Lenders (each, an "**Indemnified Party**"), and undertake to defend and hold each Indemnified Party harmless from and against any Losses incurred by the Indemnified Party in respect of any Claim arising from or on account of the Indemnifying Party's (a) breach of this Agreement, (b) negligence, willful misconduct or fraud or (c) violation of Applicable Law.

13.2. <u>Indemnification Procedures</u>. If an Indemnified Party determines that it is entitled to indemnification under this <u>Section 13</u>, such Indemnified Party shall notify the Indemnifying Party promptly and in writing of the Claim brought against such Indemnified Party, and shall provide all reasonably necessary or useful information, assistance and authority to settle and/or defend such Claim. In the event such notice is provided more than ten (10) Business Days after the Indemnified Party has received notice of such Claim, the Indemnifying Party's indemnification obligations hereunder shall be reduced to the extent, if any, such Indemnifying Party can demonstrate that it was prejudiced by the unreasonable delay of the Indemnified Party in providing notice to it. So long as the Indemnifying Party has accepted the defense and indemnity of the Indemnified Party without reservation, the selection of counsel, the conduct of the defense of any lawsuit,

THIS IS A COPY
The authoritative copy this record is held at na2.docusign.net

arbitration, or other proceeding, and any settlement shall solely be within the Indemnifying Party's control, <u>provided</u> that: (a) the Indemnified Party shall have the right to participate in the defense of such Claim using counsel of its choice, at its expense; and (b) no settlement of such Claim shall be made without the Indemnified Party's prior written consent if such settlement would impose any cost, expense or continuing obligation upon the Indemnified Party, would require any admission of guilt or fault by such Indemnified Party, or would fail to provide a complete and unconditional release in favor of the Indemnified Party for such Claim and any potential related Claims.

13.3.   <u>Limitation of Liability; Attorney Fees</u>.  The maximum liability of a Party under or in connection with this Agreement from any cause shall not exceed an amount equal to ten percent (10%) of the sum of the aggregate Loan Amounts for all Loans which have achieved Final Completion in the twelve (12) months preceding the event giving rise to the liability.  Notwithstanding any other provision herein to the contrary, the foregoing limitation of liability shall not apply to limit the liability of either Party (a) in cases of negligence, fraud or willful misconduct, or (b) with respect to such Party's indemnification obligations under <u>Section 13.1</u>.  The unsuccessful Party to any dispute resolution proceeding or to any court action permitted by this Agreement must pay the prevailing Party's costs and expenses of such proceeding, or action including, without limitation, reasonable attorney's fees, costs and expenses.  For purposes of this paragraph, attorney's fees, costs and expenses shall include, without limitation, such fees, costs and expenses incurred in connection with any post-judgment or post-award action.

13.4.   <u>No Consequential or Punitive Damages</u>.  In no event shall either Party be liable to the other Party (or, for the avoidance of doubt, any subcontractor or agent of such Party) either individually or jointly, for special, indirect, consequential, punitive or exemplary damages of any nature whatsoever, including losses or damages caused by reason of loss of use, loss of production, loss of profits or revenue, loss of contracts, inventory or use charges, interest charges or cost of capital; and each Party hereby releases the other Party and its subcontractor and agents therefrom; <u>provided</u>, <u>however</u>, the limitation of liability in this <u>Section 13.4</u> shall not apply to: (a) either Party's liability under this Agreement for indemnification under <u>Section 13.1</u>; or (b) damages arising from negligence, willful misconduct or fraud.

13.5.   <u>Supremacy</u>.  The provisions of this <u>Section **Error! Reference source not found.**</u> shall prevail over any conflicting or inconsistent provisions contained elsewhere in this Agreement or in any amendment, modification, or supplement hereto.

14.     <u>Confidentiality</u>.

14.1.   <u>Use of Confidential Information</u>.

(a)     During the Loan Origination Period, a Party ("**Recipient**") may receive or have access to Confidential Information owned by or in the possession of the other Party ("**Disclosing Party**").  The Parties agree that Confidential Information of Disclosing Party shall be used by Recipient thereof solely in the performance of its duties and obligations and in the exercise of its rights pursuant to the Program or this Agreement.  Except as otherwise may be required by Applicable Law or valid legal process, Recipient shall not disclose Confidential Information of Disclosing Party to any third party; <u>provided</u>, <u>however</u>, Recipient may disclose Confidential Information of the Disclosing Party as follows:

*Version 2.2*

(i)     to Recipient's agents, employees, Affiliates, representatives or subcontractors solely for purposes of performing Recipient's obligations and duties under this Agreement or of exercising Recipient's rights under this Agreement (so long as Recipient exercises commercially reasonable efforts to restrict further disclosure by its agents, Affiliates, representatives or subcontractors);

(ii)    to Recipient's accountants, auditors, attorneys and other professional advisors, actual or potential lenders, actual or potential equity investors, or to a Governmental Authority; or

(iii)   to any other third party as mutually agreed in writing by the Parties;

(iv)    notwithstanding the foregoing, in all events, the Persons to whom Recipient makes such disclosure shall be required to comply with the obligations of Recipient under this <u>Section 14</u>, and Recipient shall be responsible for any breach of the confidentiality obligations hereunder by any Person to whom it has disclosed Confidential Information.

(b)     One (1) year following the effective date of termination or the expiration of this Agreement, Recipient shall, within thirty (30) days thereafter, return to Disclosing Party or delete all Confidential Information of Disclosing Party in its possession; <u>provided</u>, <u>however</u>, that Recipient may maintain in its possession all such Confidential Information of Disclosing Party as may be required to be maintained under Applicable Law relating to the retention of records for the period of time required thereunder or stored on such Party's network as part of its standard back-up and archival procedures.  Notwithstanding the foregoing, all information maintained or retained by Recipient under this subsection (b) shall remain subject to the confidentiality provisions set forth in this Agreement.

(c)     If Recipient becomes required or is requested (whether by subpoena, deposition, verbal questioning, interrogatories, requests for information or documents, civil investigative demand or similar process) to disclose any Confidential Information of Disclosing Party, Recipient shall provide Disclosing Party with prompt notice of such requirement(s) or request(s) (if such notice is not otherwise prohibited by Applicable Law), so that Disclosing Party may seek an injunction, protective order or other appropriate remedy or relief and/or waive Recipient's compliance with the confidentiality provisions of this Agreement.  If Disclosing Party chooses not to seek any such remedy or relief, or such remedy or relief is denied, or Disclosing Party otherwise grants a waiver hereunder, Recipient may disclose and provide that portion (and expressly limited to only that portion) of Disclosing Party's Confidential Information which Recipient is legally compelled to disclose and shall make commercially reasonable efforts to reasonably ensure that confidential treatment shall be given to any Confidential Information of Disclosing Party so furnished.

14.2.   <u>Protection for Borrower NPPI</u>.  Each of the Parties understands and agrees that the non-public personal information of Borrowers and Loan Applicants (the "**Borrower NPPI**") and its use by each Party is or may be subject to Title V of the Gramm-Leach-Bliley Act, 15 U.S.C. §§ 6801 et seq., the FTC's Rule regarding the Privacy of Consumer Financial Information, 16 CFR. Part 313, the FTC's Standards for Safeguarding Customer Information, 16 CFR Part 314, and other Applicable Law regarding the privacy or security

*Version 2.2*

THIS IS A COPY
The authoritative copy of this record is held at na2.docusign.net

of such Borrower NPPI (collectively, the "**Privacy Laws**").  Each Party agrees that it shall comply with the Privacy Laws as applicable to it or the Borrower NPPI in its possession or control, and will promptly notify the other Party, as applicable, of any breach by such Party of any of the Privacy Laws or the provisions of this Section 14.2 with respect to such Borrower NPPI or any unauthorized access or other security breach with respect to any Borrower NPPI or other Confidential Information in its possession or control.  Further, Channel Partner shall not take any action or permit any action by any Installer that is inconsistent with privacy notices delivered by Sunlight or any Lender to Borrowers.  In the event of a breach by a Party of this Section 14.2, and without the limitation of Section 13.3, the costs of any actions reasonably or required to be taken by the non-breaching Party in connection with such breach, including as reasonably required to preserve its goodwill and reputation, shall be for the account of the breaching Party.

15.    Dispute Resolution.

15.1.    Arbitration.  Any dispute that is not otherwise settled to the mutual satisfaction of the Parties without formal proceeding or through mediation, shall then be settled by final, binding arbitration pursuant to the U.S. Federal Arbitration Act, 9 U.S.C. Section 1 *et seq.* in accordance with the American Arbitration Association Commercial Arbitration Rules.  In any arbitration, the number of arbitrators will be three (3).  Each Party shall have the right to appoint one arbitrator, who will together appoint a third neutral arbitrator within thirty (30) days after the appointment of the last Party-designated arbitrator.  All arbitration proceedings will take place in New York, New York.  The arbitrators will be entitled to award monetary and equitable relief, including specific performance and other injunctive relief; provided, however, that only damages allowed pursuant to this Agreement may be awarded.  Except as specifically provided herein, the arbitrators will allocate the costs of the arbitration proceeding.

15.2.    Consolidation.  Subject to the arbitration rules, to facilitate the efficient and comprehensive resolution of related disputes, the arbitrator may consolidate an arbitration proceeding hereunder with any other arbitration proceeding between the Parties pertaining to related matters in connection with this Agreement, a Loan Agreement, a Home Improvement Contract or any other matter relating to the Program.

16.    Miscellaneous.

16.1.    Entire Agreement.  Except as otherwise expressly provided herein, this Agreement constitutes the entire and only understanding and agreement between the Parties and supersedes and replaces any and all prior or contemporaneous, oral or written, representations, communications, understandings and agreements between the Parties with respect to the subject matter hereof.  The Parties further agree that no representation, warranty, agreement or covenant has been made regarding this Agreement, except as expressly contained herein, and that in entering into this Agreement no Party is relying upon any representation, warranty, agreement or covenant not expressly set forth herein.

16.2.    Governing Law; Submission to Jurisdiction; Jury Waiver.

(a)    *Choice of Law*.  THIS AGREEMENT SHALL BE GOVERNED BY, AND CONSTRUED UNDER, THE INTERNAL LAWS OF THE STATE OF NEW YORK, WITHOUT REFERENCE TO CONFLICTS OF LAWS RULES THEREOF OTHER THAN SECTION 5-1401 OF THE GENERAL OBLIGATIONS LAW OF THE STATE OF NEW YORK.

*Version 2.2*

THIS IS A COPY
This document is a copy. The record is held at na2.docusign.net

(b)   *Submission to Jurisdiction*.  EACH PARTY IRREVOCABLY CONSENTS AND AGREES THAT ANY ACTION, PROCEEDING, OR OTHER LITIGATION BY OR AGAINST THE OTHER PARTY WITH RESPECT TO ANY CLAIM OR CAUSE OF ACTION BASED UPON OR ARISING OUT OF OR RELATED TO THIS AGREEMENT, SHALL BE BROUGHT AND TRIED EXCLUSIVELY IN THE FEDERAL OR STATE COURTS LOCATED IN NEW YORK CITY, NEW YORK, AND ANY SUCH LEGAL ACTION OR PROCEEDING MAY BE REMOVED TO THE AFORESAID COURTS.  BY EXECUTION AND DELIVERY OF THIS AGREEMENT, EACH PARTY ACCEPTS, FOR ITSELF AND IN RESPECT OF ITS PROPERTY, GENERALLY AND UNCONDITIONALLY, THE EXCLUSIVE JURISDICTION OF THE AFORESAID COURTS.  EACH PARTY HEREBY IRREVOCABLY WAIVES (A) ANY OBJECTION WHICH IT MAY NOW OR HEREAFTER HAVE TO THE LAYING OF VENUE WITH RESPECT ANY SUCH ACTION, PROCEEDING, OR LITIGATION ARISING OUT OF OR IN CONNECTION WITH THIS AGREEMENT BROUGHT IN THE AFORESAID COURTS, AND (B) ANY RIGHT TO STAY OR DISMISS ANY SUCH ACTION, PROCEEDING, OR LITIGATION BROUGHT BEFORE THE AFORESAID COURTS ON THE BASIS OF FORUM NON CONVENIENS.  EACH PARTY FURTHER AGREES THAT PERSONAL JURISDICTION OVER IT MAY BE AFFECTED BY SERVICE OF PROCESS BY CERTIFIED MAIL, POSTAGE PREPAID, ADDRESSED AS PROVIDED IN SECTION **ERROR! REFERENCE SOURCE NOT FOUND.** AND WHEN SO MADE SHALL BE AS IF SERVED UPON IT PERSONALLY WITHIN THE STATE OF NEW YORK.

(c)   *Jury Waiver*.  TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, EACH PARTY HEREBY WAIVES TS RIGHTS TO A TRIAL BY JURY WITH RESPECT TO ANY CLAIM OR CAUSE OF ACTION BASED UPON OR ARISING OUT OF OR RELATED TO THIS AGREEMENT, IN ANY ACTION, PROCEEDING OR OTHER LITIGATION OF ANY TYPE BROUGHT BY ANY PARTY AGAINST THE OTHER PARTY, WHETHER WITH RESPECT TO CONTRACT CLAIMS, TORT CLAIMS, OR OTHERWISE. EACH PARTY HEREBY AGREES THAT ANY SUCH CLAIM OR CAUSE OF ACTION SHALL BE TRIED BY A COURT TRIAL WITHOUT A JURY.  WITHOUT LIMITING THE FOREGOING, THE PARTIES FURTHER AGREE THAT THEIR RESPECTIVE RIGHT TO A TRIAL BY JURY IS WAIVED BY OPERATION OF THIS SECTION 16.2 AS TO ANY ACTION, COUNTERCLAIM OR OTHER PROCEEDING WHICH SEEKS, IN WHOLE OR IN PART, TO CHALLENGE THE VALIDITY OR ENFORCEABILITY OF THIS AGREEMENT, OR ANY PROVISION HEREOF.  THIS WAIVER SHALL APPLY TO ANY SUBSEQUENT AMENDMENTS, RENEWALS, SUPPLEMENTS, OR MODIFICATIONS TO THIS AGREEMENT.

16.3.   Modifications.  This Agreement shall not be modified, amended, canceled or altered in any way, and may not be modified by custom, usage of trade or course of dealing, except by an update or an instrument in writing signed by both Parties.

16.4.   Advice of Counsel.  EACH PARTY TO THIS AGREEMENT ACKNOWLEDGES THAT, IN EXECUTING THIS AGREEMENT, SUCH PARTY HAS HAD THE

*Version 2.2*

DocuSign Envelope ID: 097A9E0C-539F-4F46-B166-A068F1E404B

THIS IS A COPY
No authoritative copies this record is held at na2.docusign.net

OPPORTUNITY TO SEEK THE ADVICE OF INDEPENDENT LEGAL COUNSEL AND HAS READ AND UNDERSTOOD ALL OF THE TERMS AND PROVISIONS OF THIS AGREEMENT. THIS AGREEMENT SHALL NOT BE CONSTRUED AGAINST ANY PARTY BY REASON OF THE DRAFTING OR PREPARATION HEREOF.

16.5.    <u>Counterparts</u>.    This Agreement may be executed simultaneously in two or more counterparts, each of which shall be deemed an original but all of which together constitute one and the same Agreement. In addition, facsimile signatures or electronically delivered signatures in .pdf format shall be deemed original signatures for purposes of this Agreement.

16.6.    <u>Titles and Subtitles</u>.  The section titles and subtitles used in this Agreement are used for convenience only and are not to be considered in construing or interpreting this Agreement.

16.7.    <u>Notices</u>.  All notices, requests, statements or payments will be made to the addresses and persons specified below. All notices shall be made in writing and shall be delivered by hand delivery, overnight delivery, or e-mail. Notice by email will be deemed to have been received on the day on which it was transmitted (unless transmitted after 5:00 p.m. at the place of receipt or on a day that is not a Business Day, in which case it will be deemed received on the next Business Day). Notice by hand delivery or overnight delivery will be deemed to have been received when delivered. A Party may change its address by providing notice of the same in accordance with the provisions of this <u>Section 16.7</u>.

To Sunlight:

Sunlight Financial LLC
234 W. 39th Street, 7th Floor
New York, New York 10018
Attn:    General Counsel
E-mail: notices@sunlightfinancial.com

To Channel Partner:

All Premium Contractors Inc
22647 Venture Blvd Suite 426
Woodland Hills, CA 91364
Attn: Abraham Aldana
E-mail: a.aldana@allpremiumhome.com

16.8.    <u>No Recourse to Affiliates; No Joint Venture, Etc.</u>.  This Agreement is entered into solely and exclusively between the Parties, and any obligations created herein on the part of either Party shall be the obligations solely of such Party. Unless expressly otherwise provided in this Agreement, no Party shall have recourse to any parent, subsidiary, partner, member, Affiliate, lender, director, officer or employee of the other Party for performance or non-performance of any obligation hereunder, unless such obligations were assumed in writing by the Person against whom recourse is sought. This Agreement does not and will not create a joint venture, partnership, or principal and agent relationship between Channel Partner and Sunlight. Each Party is independent of the other Party, and neither Party shall have any authority and shall not represent that it has the authority to assume or create any

*Version 2.2*

DocuSign Envelope ID: 097A9E0C-539E-4E46-B106-A868F11E4048

THIS IS A COPY
Non-authoritative copy. This record is held at na2.docusign.net

obligation, express or implied, on behalf of the other Party, except as may otherwise specifically be provided in this Agreement.

16.9.   <u>Equitable Relief</u>.  Notwithstanding anything contained in <u>Section 13</u>, nothing contained in this Agreement shall preclude either Party from seeking and obtaining specific performance and any other type of injunctive or other equitable relief from any court having competent jurisdiction hereof to prevent irreparable harm, to maintain the status quo, or for any other purpose for which equitable relief is available until such time as the controversy is otherwise resolved, and without the necessity of showing that monetary damages cannot be measured or of posting any bond.

16.10.  <u>Assignment</u>. Neither Party may assign any rights or delegate any duties under this Agreement without the prior written consent of the other Party, which consent shall not be unreasonably withheld, conditioned or delayed.  However, Sunlight (or any direct or indirect permitted assignee of Sunlight) shall have the right: (a) to assign any or all of its rights and duties under this Agreement to any of its Affiliates, Lender(s) or any Affiliates of any Lender without consent of Channel Partner; and (b), to assign any or all of its rights under this Agreement as collateral security, authorizing the secured party to step into its shoes and directly enforce all of its rights under this Agreement in the event of a default by it of its obligations to the secured party (resulting in the secured party having the right to: (i) receive any payments and performance otherwise due it under this Agreement; (ii) make all demands and give all notices it could otherwise make under this Agreement; (iii) directly enforce against Channel Partner all its rights under this Agreement; and (iv) otherwise exercise all of its rights under this Agreement in its place and stead, including any default cure rights).   No assignment shall release the assigning Party from any of its obligations under this Agreement absent the written consent to the release by the other Party.   This Agreement shall inure to the benefit and be binding upon each Party's respective successors and permitted assigns.  Any purported assignment in violation of this <u>Section 16.10</u> is invalid and void.

16.11.  <u>Expenses.</u>  Except as otherwise provided in this Agreement, the Parties will each pay their own expenses incident to the negotiation, preparation and performance of this Agreement, including the fees, expenses and disbursements of their respective counsel and accountants.

16.12.  <u>Severability</u>.  If any provision of this Agreement shall be judicially determined to be invalid, illegal or unenforceable, the validity, legality and enforceability of the remaining provisions shall not in any way be affected or impaired thereby.

16.13.  <u>No Third Party Beneficiaries</u>.  Each Lender hereunder shall be an intended third-party beneficiary with full rights to enforce this agreement in connection with Loans made by such Lender under the Program.  No other person or legal entity is or shall be considered to be an intended third-party beneficiary thereof, and no person other than the Parties hereto any Lender hereunder shall have an enforceable right to any benefits under this Agreement.

16.14.  <u>Waiver</u>.  The waiver by either Party of any breach of any term, condition, or provision herein contained shall not be deemed to be a waiver of such term, condition, or provision, or any subsequent breach of the same, or any other term, condition, or provision contained herein.

16.15.  <u>Further Assurances</u>.  Each Party to this Agreement hereby covenants and agrees, without the necessity of any further consideration, to execute and deliver any and all such further documents and take any and all such other actions as may be necessary or appropriate to

COPY PREVIEW

*Version 2.2*

THIS IS A COPY
No authoritative copy of this record is held at na2.docusign.net

carry out the intent and purposes of this Agreement and to consummate the transactions contemplated herein.

[signature page follows]



*Version 2.2*

The authoritative copy of this record is held at na2.docusign.net

**IN WITNESS WHEREOF**, each of the Parties has executed this Financing Program Agreement as of the Effective Date.

<u>**SUNLIGHT**</u>:

**SUNLIGHT FINANCIAL LLC**, a Delaware limited liability company

By: _____

Name: Matt Potere

Title:  Chief Executive Officer

<u>**CHANNEL PARTNER**</u>:

**ALL PREMIUM CONTRACTORS INC**

By: _____

Name: Abraham Aldana

Title:  CEO

*Version 2.2*

THIS IS A COPY
the authoritative copy of this record is held at na2.docusign.net

## Schedule I

## Definitions

"**Additional Qualification Criteria**" is defined in <u>Section 5.2</u>.

"**Advancing Party**" is defined in <u>Section 12.4</u>.

"**Affiliate**" means, when used with respect to any Person, any other Person directly or indirectly controlling, controlled by or under common control with, such Person; <u>provided</u> that, with respect to Sunlight, no other entity owned by any investment firm, fund, company or other entity that is a member of Sunlight shall be deemed to be an Affiliate of Sunlight.  As used in this definition, the term "control" means the power, directly or indirectly, to direct or cause the direction of the management and policies of a Person, whether through ownership of such Person's voting securities, by contract or otherwise, and the terms "affiliated", "controlling" and "controlled" have correlative meanings.

"**Agreement**" is defined in the preamble.

"**Applicable Law**" means, at any time, any federal, state, commonwealth and local law, statute, rule, regulation, court order or decree, administrative order or decree, and other legal requirements of any type applicable to a Party, a Loan, this Agreement, the transactions contemplated hereby (including, without limitation the marketing of the Loans financing the Systems), or relating to or affecting any Party's obligations under this Agreement, and all requirements of any Governmental Authority having jurisdiction over a Party or the transactions contemplated hereby, as any such laws, statutes, rules, regulations, orders and requirements may be amended and in effect from time to time during the term of this Agreement.

"**Approved Engineering Standards**" means engineering standards applicable to the construction and installation of any System as approved by Sunlight in writing from time to time.

"**Approved Solar System Equipment**" means all equipment for the construction and installation of any Solar System set forth on <u>Exhibit E</u> or as otherwise approved by Sunlight in writing from time to time.

"**Battery System**" is defined in the Recitals.

"**Battery Only Loans**" is defined in <u>Section 2.2</u>.

"**Borrower**" and "**Borrowers**" are defined in the Recitals.

"**Borrower NPPI**" is defined in <u>Section 14.3</u>.

"**Borrower Qualification Criteria**" is defined in <u>Section 3.1</u>.

"**Business Day**" means any day, other than a day on which banking institutions in the State of New York are authorized or obligated by Applicable Law or executive order to be closed.

"**Channel Partner**" is defined in the preamble.

*Version 2.2*

THIS IS A COPY
The authoritative copy this record is held at na2.docusign.net

"**Claims**" means any and all claims, causes of action, lawsuits, disputes, arbitration proceedings, controversies, administrative proceedings, investigations, inquiries, audits, enforcement actions, demands, proposed assessments, deficiencies, adjustments, penalties, fines, Damages, and remedies sought, initiated, filed or levied by or on behalf of any Governmental Authority or any other third party in connection with the Program or this Agreement.

"**complete**", "**completion**" or "**completed**" used in reference to a milestone are defined in <u>Section 4.1</u>.

"**Confidential Information**" means: (a) the terms and conditions of this Agreement; (b) information regarding a Party's customers, capital structure, financial condition and results of operations, financial models, projections, loss and return estimates, compliance and risk management systems, loan pricing, customer fees and charges, vendor relationships and pricing, organizational structure, as well as non-public information regarding pending corporate events or pending or threatened litigation or regulatory matters involving such Party; (c) information regarding a Party's proprietary discoveries, developments, improvements, processes, systems, methods, devices, patents, patent applications, inventions, trademarks, intellectual property, know-how, trade secrets, instruments, materials, products, programs, techniques, designs, data, specifications, computer programs/code (object or source), costs of production, promotional methods, marketing plans/strategies, business opportunities, or customer lists; (d) information that: (i) is marked "Confidential", "Proprietary" or in some similar way, (ii) a Party identifies as Confidential Information when disclosed or within a reasonable time after such disclosure, or (iii) the other Party knows, or should reasonably know, to be confidential or proprietary to the disclosing Party; and (e) any third party information with respect to which Disclosing Party is subject to restrictions on disclosure or use based on the confidential nature of such information. Notwithstanding the foregoing, "**Confidential Information**" does not include any information that: (i) was publicly known or made generally available to the public prior to its disclosure hereunder; (ii) becomes publicly known or is made generally available to the public following its disclosure hereunder through no wrongful act or omission of Recipient or anyone to whom Recipient has disclosed such information without breach of this Agreement; (iii) Recipient rightfully possessed without any duty of confidentiality prior to its disclosure hereunder; (iv) was independently developed by Recipient without use of or reference to any information received by or on behalf of Recipient hereunder; or (v) Recipient obtained from a third party, where such third party was not to the knowledge of Recipient subject to any restrictions on disclosure with respect to such information.

"**Courtesy Call**" is defined in <u>Section 3.4</u>.

"**Credit Approval**" is defined in <u>Section 3.2</u>.

"**Damages**" means any and all actual losses, assessments, damages, indemnities, liabilities, obligations, deficiencies, adjustments, judgments, settlements, dispositions, awards, offsets, penalties, fines and interest.

"**Disbursement Account**" is defined in <u>Section 4.3</u>.

"**Disclosing Party**" is defined in <u>Section 14.1(a)</u>.

"**Effective Date**" is defined in the preamble.

"**Equipment**" is defined in <u>Section 5.4</u>.

"**Final Completion**" is defined in <u>Exhibit D</u>.

THIS IS A COPY

The authoritative copy of this record is held at na2.docusign.net

"**Final Completion Failure**" is defined in <u>Section 4.5</u>.

"**Funding Amount**" means the amount financed under the Loan minus the OID for the Loan.

"**Funding Payment**" is defined in <u>Section 4.3</u>.

"**Funding Percentages**" are set forth in <u>Exhibit D</u>.

"**Funding Requests**" is defined in <u>Section 4.2</u>.

"**Governmental Authority**" means any federal, commonwealth, state or local regulatory agency or other governmental agency or authority having jurisdiction over a Party, any Loan, any Loan Applicant, any Borrower or any Lender, which shall include, but not be limited to, the Federal Deposit Insurance Corporation.

"**Home Improvement Contract**" is defined in <u>Section 9.2</u>.

"**Indemnified Party**" is defined in <u>Section 13.1</u>.

"**Indemnifying Party**" is defined in <u>Section 13.1</u>.

"**Initial Approval**" is defined in <u>Exhibit D</u>.

"**Installation Failure**" is defined in <u>Section 4.4</u>.

"**Installer**" and "**Installers**" are defined in the Recitals.

"**Installer Probation**" is defined in <u>Section 7.4</u>.

"**Installer Qualification Guidelines**" are set forth on <u>Exhibit G</u>.

"**Lender**" and "**Lenders**" are defined in the Recitals.

"**Lender Disbursements**" is defined in <u>Section 4.3</u>.

"**Lender Trademarks**" are defined in <u>Section 8.2</u>.

"**Loan Agreement**" means each contract for Loan(s) to finance Systems between a Borrower and a Lender, which may vary by territory, Installer and type of Loan, and shall be made available through the Platform.

"**Loan Amount**" is defined in <u>Section 2.2</u>.

"**Loan Applicant**" is defined in <u>Section 3.1</u>.

"**Loan Applications**" is defined in <u>Section 3.1</u>.

"**Loan Application Package**" means the Loan Application and other documents required for a Loan Applicant to apply for a Loan.

*Version 2.2*

THIS IS A COPY
no authoritative copies this record is held at na2.docusign.net

"**Loan Origination Period**" means a period of one (1) year commencing on the Effective Date, as such period may be extended in accordance with Section 12.1.

"**Loan Terms**" is defined in Section 2.1.

"**Loan**" and "**Loans**" are defined in the Recitals.

"**Losses**" means any and all Damages, and reasonable attorneys', accountants' or experts' fees and expenses relating to any Claim, including any such fees and expenses incurred in any investigations, proceedings, counterclaims, defenses or appeals that could reasonably result in incurring or avoiding any Damages.

"**Maximum Loan Amount**" is defined in Exhibit B.

"**Minimum Loan Amount**" is defined in Exhibit B.

"**Non-Solar Assets**" means, with respect to any given Loan, those certain non-solar home assets included in Solar Plus Roof Loans in accordance with the Program Specifications.

"**Non-Solar System Warranty**" is defined in Section 6.2.

"**OID**" means original issue discount, calculated as a percentage of the Loan Amount under each Loan, as provided in Exhibit A.

"**Other Loans**" is defined in Section 2.2.

"**Other Non-Solar Guarantee**" is defined in Section 6.2.

"**Other Solar Guarantees**" is defined in Section 6.1.

"**Other System**" is defined in the Recitals.

"**Party**" and "**Parties**" are defined in the preamble.

"**Platform**" means a credit platform or other application programming interface.

"**Privacy Laws**" is defined in Section 14.3.

"**Program**" is defined in the Recitals.

"**Project Milestones**" are defined in Exhibit D.

"**Prudent Industry Practices**" means prevailing best practices, methods and equipment, as changed from time to time, that are used by installers, operators and managers (a) in respect of Solar Systems of comparable residential solar photovoltaic generating systems similar in age, size, location and condition, (b) in respect of Non-Solar Assets or other types of Systems, of comparable projects.

"**Program Specifications**" is defined in Section 2.2.

*Version 2.2*

SCHEDULE I

DocuSign Envelope ID: 097A9E0C-529E-4E46-B160-A968F11E4048

THIS IS A COPY
no authoritative copy of this record is held at na2.docusign.net

"**Program State**" is defined in <u>Section 2.3</u>.

"**Recipient**" is defined in <u>Section 14.1(a)</u>.

"**Refund Amount**" is defined in <u>Section 4.5</u>.

"**Renewal Period**" is defined in <u>Section 12.1</u>.

"**Rights**" is defined in <u>Section 12.4</u>.

"**Sales Organization**" is defined in <u>Section 8.1(d)</u>.

"**Solar Only Loan**" is defined in <u>Section 2.2</u>.

"**Solar Plus Roof Loan**" is defined in <u>Section 2.2</u>.

"**Solar Plus Roof System**" is defined in the Recitals.

"**Solar System**" is defined in the Recitals.

"**Solar System Qualification Criteria**" is defined in <u>Section 5.1</u>.

"**Substantial Completion**" is defined in <u>Exhibit D</u>.

"**Substantial Completion Failure**" is defined in <u>Section 4.5</u>.

"**Sunlight**" is defined in the preamble.

"**Sunlight Trademarks**" are defined in <u>Section 8.2</u>.

"**System**" is defined in the Recitals.

"**System Purchase Price**" is defined in <u>Section 2.2</u>.

"**Warranty Agreement**" is defined in <u>Section 6.1(a)</u>.

THIS IS A COPY
no authoritative copy the record is held at na2.docusign.net

**Exhibit A**

**Loan Terms**

Loan Terms Product 1 – Solar Only Loans:

*Amortization*:  Mortgage style with an automatic reamortization after 18 months

*Prepayment Penalty*:  None

*Tenor, OID and Annual Interest Rate For Applicable Products*:

| **Tenor** | **OID (Netted From Funded Loan Amount or Paid to Sunlight or the Lender)** | **Annual Interest Rate (Payable on A Monthly Basis)** |
|---|---|---|
| 10 years | 15.25% | 2.99% |
| 15 years | 15.25% | 3.99% |
| 20 years | 14.50% | 4.99% |

***Note that the OID for any loan product described on this Exhibit A shall be increased by 0.50% for Loans to Borrowers located in Florida.***

*Version 2.2*

THIS IS A COPY

the authoritative copy this record is held at na2.docusign.net

**Exhibit B**

**Program Specifications**

| | |
|---|---|
| **Effective Date:** | 3/23/2019 \| 4:26 PM PDT |
| **Issued by:** | Sunlight Financial LLC |
| | **PRODUCT 1: SOLAR ONLY LOAN** |
| **Permissible Add-on Percentage** | • Add-ons may not exceed 15% of the amount financed<br>• Add-ons are limited to any additional Non-Solar Asset installed by Channel Partner and are subject to Sunlight approval |
| **Ineligible Property** | • Rental properties<br>• Condominiums<br>• Mobile/manufactured homes<br>• Multi-family residences of more than 4 units<br>• Commercial properties, including commercial farms<br>• Properties owned by a limited liability company<br>• Properties owned by a Life Estate |
| **Qualification Criteria** | • Borrower must be an owner(s) of the property<br>  o Residence may be owned by a trust, if used as a primary or secondary residence by the trustee(s)<br>• Residence must be equipped to support transmission of Solar System performance data via a cellular network<br>• Residence must meet all technical criterial to install a Solar System (including roof stability)<br>• Solar System must use only Approved Solar System Equipment<br>• Solar System must meet Approved Engineering Standards<br>• Solar System must be initially configured to allow remote shut-off by Channel Partner |
| **Security** | Lender will obtain a first lien on the financed Solar System and any additional Non-Solar Asset through a UCC-1 and/or fixture filing |
| **Minimum Loan Amount** | $10,000 |
| **Maximum Loan Amount** | Subject to the requirements of any Lender, $100,000 or such greater amount as Sunlight shall determine with respect to any given Loan in its sole discretion |
| **Program States** | **CALIFORNIA** |

*Version 2.2*

THIS IS A COPY
The authoritative copies and record is held at na2.docusign.net

**Exhibit C**

**Borrower Qualification Criteria**

1. Borrower must have a FICO score acceptable to Sunlight in its sole discretion.  Loans shall be subject to such further qualification criteria as Sunlight shall specify from time to time in its sole discretion.

2. Borrower must not have had any prior bankruptcies or significant delinquencies within the past three (3) years.



*Version 2.2*

DocuSign Envelope ID: 097A9E0C-539E-4E46-B106-A068F11E4048

THIS IS A COPY

no authoritative copy this record is held at na2.docusign.net

## Exhibit D

### Project Milestones

The following table sets forth the Funding Percentage for the achievement of specified Project Milestones ("**Project Milestones**"), described below:

| Milestone | Funding Percentage |
|---|---|
| Initial Approval | **0**% |
| Substantial Completion | **80**% |
| Final Completion | **20**% |

**Initial Approval Milestone:**

The initial approval milestone ("**Initial Approval**") shall be achieved upon satisfaction of the following milestone criteria, which may be updated from time to time by mutual agreement of the Parties:

- The following agreements have been executed and uploaded to the Platform:
  - o A fully completed and executed loan agreement package, which includes:
    1. Cover Page Confirming Key Terms in Loan Agreement(s);
    2. Loan Agreement(s);
    3. Payment Election Form, including a copy of a voided check and completed ACH form (optional); and
    4. Any relevant credit union membership applications, which may vary across capital providers.
  - o Home Improvement Contract between Borrower and Channel Partner for installation. The Home Improvement Contract must specify the total cost of the Solar System, as applicable, must be signed and dated by the Borrower, must reflect the address of the installation, and must reflect all Channel Partner countersignatures (if applicable).

**Substantial Completion Milestone:**

The substantial completion milestone ("**Substantial Completion**") shall be achieved upon satisfaction of the following milestone criteria:

- All milestone criteria for Initial Approval continue to be satisfied;
- Updated Initial Approval documents, if changes have been made to the Initial Approval document package; and
- Platform has an electronic record of the following documents:
  - o Photo(s) evidencing that Solar System is in compliance with all applicable agreements, particularly the Solar System Qualification Criteria defined in Exhibit E and the Home Improvement Contract.
  - o Final Design and Engineering Documents for the Solar System. The Final Design and Engineering document must have a customer identifier, i.e., name and address, that allows Sunlight Financial to match the document to the customer.

**Final Completion Milestone:**

The final completion milestone ("**Final Completion**") shall be achieved upon satisfaction of the following criteria:

- All milestone criteria for Initial Approval and Substantial Completion continue to be satisfied; and
- Platform has an electronic record of certain key documents, including:

*Version 2.2*

THIS IS A COPY
No authoritative copies this record is held at na2.docusign.net

- o Final utility inspection letter granting permission to operate the Solar System or equivalent proof reasonably acceptable to Sunlight that such permission has been granted.
- o Channel Partner enabling Sunlight to monitor system performance by granting Sunlight access to the inverter's monitoring platform



THIS IS A COPY

The authoritative copy of this record is held at na2.docusign.net

**Exhibit E**

**Approved Solar System Equipment**

| Panel Manufacturers | Inverter Manufacturers | Battery Manufacturers |
|---|---|---|
| Adani | ABB/PowerOne | LG Chem Resu |
| Au Optronics | APsystems | Pika Energy |
| Axitec | Delta | sonnenBatterie eco |
| Boviet | Enphase | Tesla Powerwall 1 |
| BP | Fronius | Tesla Powerwall 2 |
| BYD | Hoymiles | |
| Canadian | Huawei | |
| CentroSolar | Pika Energy | |
| Certainteed | Schneider | |
| CSUN | SMA | |
| Delsolar | SolarEdge | |
| ET Solar | Ginlong/Solis | |
| Flextronics | SunPower | |
| GCL | | |
| Hanwha | | |
| Heliene | | |
| HT | | |
| Huawei | | |
| Hyundai | | |
| ITEK | | |
| JA | | |
| Jinko | | |
| Kyocera | | |
| Lerri/Longi | | |
| LG | | |
| Lightway | | |
| Mission Solar Energy | | |
| Mitsubishi | | |
| Motech | | |
| Panasonic | | |
| Peimar | | |
| REC | | |
| RECOM | | |
| Renesola | | |
| Samsung | | |
| Seraphim | | |
| Sharp | | |
| Silevo/SCTY | | |

*Version 2.2*

DocuSign Envelope ID: 097A9E0C-539E-4E46-B106-A068F11E404B

THIS IS A COPY

No authoritative copies this record is held at na2.docusign.net

| Silfab |
|---|
| Silicon Energy |
| Solaria |
| SolarOne |
| SolarWorld |
| S-Energy |
| SunPower |
| Suntech |
| Trina |
| Yingli |



THIS IS A COPY
The authoritative copy of this record is held at na2.docusign.net

**Exhibit F**

**Other Channel Partner System Warranties**

[None.]



THIS IS A COPY
no authoritative copy, the record is held at na2.docusign.net

## Exhibit G

### Installer Qualification Guidelines

A.      <u>Licenses</u>.  Channel Partner and each Installer shall hold any and all licenses and permits required for its activities under the Program in any Program State, and shall at all times comply with all applicable licensure and permit requirements.

B.      <u>Bonding</u>.  To the extent required by Applicable Law, Channel Partner and each Installer shall at all times maintain all required bonds.

C.      <u>Insurance</u>.  Channel Partner and each Installer shall bind and maintain liability and worker's compensation insurance in each Program State with minimum coverage limits as may be required by Applicable Laws and as otherwise required to comply with Prudent Industry Practices.

D.      <u>Employees</u>.  All personnel of Channel Partner and each Installer shall be duly trained in the installation of Solar Systems and/or other applicable Systems as required by any Governmental Authority or Applicable Law.  All personnel involved in the sale of Solar System and/or other applicable Systems shall be sufficiently trained, including, without limitation with respect to compliance with Applicable Laws.

E.      <u>Encumbrances</u>.  No Installer shall have any pending suits, liens, legal judgments or bankruptcies, except as explicitly approved by both Channel Partner and Sunlight in writing for good cause.