UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

ALL PREMIUM CONTRACTORS INC.,

                Plaintiff,

-against-

SUNLIGHT FINANCIAL LLC,

                Defendant.

Case No. 1:23-cv-05059 (JLR)

**OPINION AND ORDER**

---

JENNIFER L. ROCHON, United States District Judge:

      Plaintiff All Premium Contractors Inc. ("Plaintiff" or "All Premium") filed this action against Defendant Sunlight Financial LLC ("Defendant" or "Sunlight") on June 15, 2023, alleging five causes of action: (1) breach of contract, (2) fraud, (3) conversion, (4) breach of the covenant of good faith and fair dealing, and (5) unjust enrichment. *See* ECF No. 1 ("Compl."). The dispute relates to a Financing Program Agreement that the parties entered on March 23, 2019, regarding the installation of solar panels, which is attached as Exhibit 1 to the Complaint. *See id.* ¶ 7; ECF No. 1-1 (the "Agreement"). Now before the Court is Defendant's motion to compel arbitration and stay this action based on the Agreement's arbitration clause. *See* ECF Nos. 14 ("Br."), 24 ("Reply"). Plaintiff opposes the motion. ECF No. 18 ("Opp."). For the reasons stated below, Defendant's motion is GRANTED.

## BACKGROUND

      The following facts are taken from the Complaint and the papers submitted by the parties in connection with Defendant's motion to compel arbitration. There is no dispute that the Federal Arbitration Act, 9 U.S.C. §§ 1-16 (the "FAA"), applies to the Agreement's arbitration provision, and the Court applies a "standard similar to that applicable for a motion for summary judgment" in deciding the motion to compel arbitration. *Bensadoun v. Jobe-Riat*, 316 F.3d 171,

176 (2d Cir. 2003); *see* Opp. at 1-2.  The Court considers all relevant, admissible evidence submitted by the parties and contained in the pleadings.  *See Nicosia v. Amazon.com, Inc*., 834 F.3d 220, 229 (2d Cir. 2016).  Unless otherwise noted, the facts are undisputed and the Court draws all reasonable inferences in favor of the non-moving party.  *See id.*

   A.  The Agreement

Because the instant motion involves the parties' contractual relationship, the Court begins with the contractual provisions agreed to by the parties.  On March 23, 2019, the parties entered into the Agreement.  Compl. ¶ 7; Agreement.  The Agreement contains a section titled "Dispute Resolution," which states:

> Arbitration.  Any dispute that is not otherwise settled to the mutual satisfaction of the Parties without formal proceeding or through mediation, shall then be settled by final, binding arbitration pursuant to the U.S. Federal Arbitration Act, 9 U.S.C. Section 1 *et seq.*, in accordance with the American Arbitration Association Commercial Arbitration Rules.  In any arbitration, the number of arbitrators will be three (3).  Each Party shall have the right to appoint one arbitrator, who will together appoint a third neutral arbitrator within thirty (30) days after the appointment of the last Party-designated arbitrator.  All arbitration proceedings will take place in New York, New York.  The arbitrators will be entitled to award monetary and equitable relief, including specific performance and other injunctive relief; provided, however, that only damages allowed pursuant to this Agreement may be awarded.  Except as specifically provided herein, the arbitrators will allocate the costs of the arbitration proceeding.

Agreement § 15.1.  In a section titled "Miscellaneous," the Agreement contains a choice-of-law provision selecting New York law, *id.* § 16.2(a), and provisions captioned "*Submission to Jurisdiction*" and "*Jury Waiver*," which state, respectively:

> (b) *Submission to Jurisdiction*.  Each party irrevocably consents and agrees that any action, proceeding, or other litigation by or against the other party with respect to any claim or cause of action based upon or arising out of or related to this agreement, shall be brought and tried exclusively in the federal or state courts located

2

> in New York City, New York, and any such legal action or proceeding may be removed to the aforesaid courts. By execution and delivery of this agreement, each party accepts, for itself and in respect of its property, generally and unconditionally, the exclusive jurisdiction of the aforesaid courts. Each party hereby irrevocably waives (A) any objection which it may now or hereafter have to the laying of venue with respect to any such action, proceeding, or litigation arising out of or in connection with this agreement brought in the aforesaid courts, and (B) any right to stay or dismiss any such action, proceeding, or litigation brought before the aforesaid courts on the basis of forum non conveniens. Each party further agrees that personal jurisdiction over it may be affected by service of process by certified mail, postage prepaid, addressed as provided in section . . . , and when so made shall be as if served upon it personally within the State of New York.
>
> (c) *Jury Waiver*. To the fullest extent permitted by applicable law, each party hereby waives its rights to a trial by jury with respect to any claim or cause of action based upon or arising out of or related to this agreement, in any action, proceeding or other litigation of any type brought by any party against the other party, whether with respect to contract claims, tort claims, or otherwise. Each party hereby agrees that any such claim or cause of action shall be tried by a court trial without a jury. Without limiting the foregoing, the parties further agree that their respective right to a trial by jury is waived by operation of this Section 16.2 as to any action, counterclaim or other proceeding which seeks, in whole or in part, to challenge the validity or enforceability of this agreement, or any provision hereof. This waiver shall apply to any subsequent amendments, renewals, supplements, or modifications to this agreement.

*Id.* § 16.2(b), (c) (capitalization omitted).

On March 23, 2019, the parties entered into a Prequalification Addendum to the Agreement concerning Plaintiff's use and access to Defendant's credit agency. *See* ECF No. 16-2 (the "Prequalification Addendum") § 1. The Prequalification Addendum "supplement[s]" the Agreement and does not contain any arbitration or forum selection clause. *Id.* § 8.

On August 10, 2021, the parties entered into a Solar Plus Product Amendment to the Agreement. *See* ECF No. 16-3 (the "First Amendment"). The First Amendment does not

3

expressly change the Agreement's arbitration or forum selection clauses.  *See id.* § 4.1.  Section 4.1 of the First Amendment states:

> <u>Effect of Amendment: Entire Agreement</u>.  Except as expressly amended and modified by this Amendment, all terms and conditions set forth in the Agreement shall remain unmodified, binding, and in full force and effect.  This Amendment sets forth the entire agreement and understanding of the Parties regarding the particular subject matter of this Amendment, and merges and supersedes all prior or contemporaneous agreements, discussions and correspondence pertaining to the subject matter of this Amendment.

*Id.*  The First Amendment is governed by New York law, *id.* § 4.3, and states that it is subject to Section 16 of the Agreement, *id.* § 4.4.  Section 16 of the Agreement contains the forum selection clause quoted above.  Agreement § 16.2(b).

On February 15, 2022, the parties entered into a Direct Funding Program Addendum to the Agreement.  *See* ECF No. 16-4 (the "Second Addendum").  Like the previous addendum, the Second Addendum does not expressly change the Agreement's arbitration or forum selection clauses.  *See id.* § 5.1.  Section 5.1 states:

> <u>Effect of Addendum: Entire Agreement</u>.  Except as expressly modified by this Addendum, all terms and conditions set forth in the Agreement shall remain unmodified, binding, and in full force and effect.  This Addendum sets forth the entire agreement and understanding of the Parties regarding the particular subject matter of this Addendum, and merges and supersedes all prior or contemporaneous agreements, discussions and correspondence pertaining to the subject matter of this Addendum including, without limitation, any Direct Funding Program Addendum to Financing Program Agreement entered into between the Parties prior to the Addendum Effective Date.

*Id.*  The Second Addendum is governed by New York law, *id.* § 5.3, and states that it is subject to Section 16 of the Agreement, *id.* § 5.4.

### B. The Present Dispute

On June 15, 2023, Plaintiff filed its Complaint, alleging that Defendant failed to pay Plaintiff for work performed under the Agreement. *See* Compl. Plaintiff alleges that it commenced its action in this District pursuant to the Agreement's forum selection clause. *See id*. ¶ 4. On August 4, 2023, Defendant moved to compel arbitration and stay this action pursuant to the Agreement's arbitration clause. *See* Br. That motion is now fully briefed. *See* Opp.; Reply.

## DISCUSSION

### A. Legal Standard

In considering a motion to compel arbitration under the FAA, 9 U.S.C. § 4, courts apply a "standard similar to that applicable to a motion for summary judgment," *Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 74 (2d Cir. 2017) (quoting *Nicosia*, 834 F.3d at 229); *see also Bensadoun*, 316 F.3d at 175. Under this standard, "the Court must grant a motion to compel arbitration if the pleadings, discovery materials before the Court, and any affidavits show there is no genuine issue as to any material fact and it is clear the moving party is entitled to judgment as a matter of law." *Ryan v. JPMorgan Chase & Co.*, 924 F. Supp. 2d 559, 561-62 (S.D.N.Y. 2013). If the facts in the record are undisputed and "require the matter of arbitrability to be decided against one side or the other as a matter of law," the Court "may rule on the basis of that legal issue and avoid the need for further court proceedings." *Meyer*, 868 F.3d at 74 (citation and quotation marks omitted).

Under Section 2 of the FAA, a commercial "agreement . . . to submit to arbitration" is generally "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The statute "revers[ed] centuries of judicial hostility to arbitration agreements, [and] was designed to allow parties to avoid the

5

costliness and delays of litigation, and to place arbitration agreements upon the same footing as other contracts." *Daly v. Citigroup Inc.*, 939 F.3d 415, 421 (2d Cir. 2019) (citation omitted). The Supreme Court has made clear that the FAA "establishes 'a liberal federal policy favoring arbitration agreements.'" *Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1621 (2018) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)). "[B]y its terms, the FAA leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Daly*, 939 F.3d at 421 (original brackets omitted) (quoting *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985)). However, "arbitration is a matter of contract and a party cannot be required to submit to arbitrate any dispute which he has not agreed so to submit." *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 648 (1986) (citation omitted). In deciding a motion to compel arbitration, the question is first whether the parties agreed to arbitrate, and second, whether the dispute at issue comes within the arbitration agreement. *See ACE Cap. Re Overseas Ltd. v. Cent. United Life Ins. Co.*, 307 F.3d 24, 28 (2d Cir. 2002).

There is no presumption in favor of arbitration where the parties dispute, as here, whether an obligation to arbitrate exists. *See Applied Energetics, Inc. v. New Oak Cap. Mkts., LLC*, 645 F.3d 522, 526 (2d Cir. 2011). To assess whether a contractual obligation to arbitrate exists, "courts should generally apply state law principles that govern the formation of contracts." *Id.* (citation omitted). Here, the Agreement provides that New York law governs, and the parties do not dispute the applicability of New York contract law. *See* Agreement § 16.2(a); Opp. at 3; Reply at 6. The primary objective of contract interpretation is "to give effect to the intent of the parties as revealed by the language of their agreement." *Chesapeake Energy Corp. v. Bank of*

6

*N.Y. Mellon Tr. Co.*, 773 F.3d 110, 113-14 (2d Cir. 2014) (citation omitted); *accord Tomhannock, LLC v. Roustabout Res., LLC*, 128 N.E.3d 1080, 1082 (N.Y. 2019). Under New York law, the "words and phrases in a contract should be given their plain meaning, and the contract should be construed so as to give full meaning and effect to all of its provisions." *Chesapeake Energy*, 773 F.3d at 114 (brackets and citation omitted); *accord Ellington v. EMI Music, Inc.*, 21 N.E.3d 1000, 1003 (N.Y. 2014).

### B. Analysis

Plaintiff does not dispute that the Court, rather than an arbitrator, should decide whether there is a valid arbitration agreement. *See* Opp. at 5. The parties also agree that they entered into the Agreement on March 23, 2019, and other amendments thereafter. Instead, at issue is whether the parties agreed to arbitrate in those agreements. In moving to compel arbitration, Defendant relies on Section 15.1 of the Agreement, which states that "[a]ny dispute" that has not been settled by the parties "shall then be settled by final, binding arbitration" pursuant to the FAA, in accordance with the commercial rules of the American Arbitration Association (the "AAA Commercial Rules"). Agreement § 15.1.

Plaintiff raises two arguments in response, relying on the forum selection clause in Section 16.2(b), which states in relevant part that "each party irrevocably consents and agrees that any action, proceeding, or other litigation by or against the other party with respect to any claim or cause of action based upon or arising out of or related to this agreement, shall be brought and tried exclusively in the federal or state courts located in New York City, New York, and any such legal action or proceeding may be removed to the aforesaid courts." *Id.* § 16.2(b) (capitalization omitted). First, Plaintiff argues that subsequent amendments to the Agreement "omi[t] any reference to section 15 of the [A]greement," Opp. at 6, and therefore the "the initial

7

arbitration clause [is] void and makes the forum selection clause mandatory," *id.* at 7.  Second, Plaintiff argues that "where both a forum selection clause and an arbitration agreement are mandatory and all-inclusive (and thus compel that the same subject matter be litigated in two different forums), the two cannot be reconciled, and enforcement of the forum selection clause necessarily precludes enforcement of the conflicting arbitration provision." *Id.* at 7-8.  The Court will address each of these arguments in turn.

    The Court does not agree with Plaintiff that the amendments to the Agreement "void" the arbitration clause.  The Prequalification Addendum does not address dispute resolution at all, either by reference to an arbitration provision or a forum selection clause, and simply "supplement[s]" the Agreement with respect to the use of Sunlight's credit agency.  Prequalification Addendum § 8.  Thus, this addendum is not relevant to the analysis.

    The First Amendment and Second Addendum also do not void the Agreement's arbitration clause.  They state that, "[e]xcept as expressly amended and modified by th[e] [First Amendment or Second Addendum], all terms and conditions set forth in the Agreement shall remain unmodified, binding, and in full force and effect."  First Amendment § 4.1; Second Addendum § 5.1.  As Plaintiff admits, neither the First Amendment nor Second Addendum amends, modifies, or even addresses, the arbitration clause.  *See* Opp. at 6.  Thus, because the arbitration clause is not "expressly amended and modified by" the First Amendment or Second Addendum, the subsequent agreements provide that the arbitration clause "shall remain unmodified, binding, and in full force and effect."  First Amendment § 4.1; Second Addendum § 5.1.  The First Amendment and Second Addendum also state that they "merg[e] and supersed[e] all prior or contemporaneous agreements, discussions and correspondence" with respect to "*the subject matter of this* [First Amendment and Second Addendum]."  First

8

Amendment § 4.1 (emphasis added); Second Addendum § 5.1 (emphasis added). As a result, the merger clauses of the First Amendment and Second Addendum do not extinguish the earlier arbitration provision not addressed in these subsequent agreements.

The only nod to dispute resolution in the First Amendment and Second Addendum is in Sections 4.4 and 5.4, respectively, which state that "[t]he Parties agree that, unless to the contrary of anything contained herein, th[e] [First Amendment and Second Addendum] shall be subject to the additional provisions of Section 16 of the Agreement." First Amendment § 4.4; Second Addendum § 5.4. A subsection of Section 16 of the Agreement, Section 16.2(b), contains the forum selection clause. Agreement § 16.2(b). Thus, these provisions confirm that the Agreement's forum selection clause applies to the First Amendment and Second Addendum. *See* First Amendment § 4.4; Second Addendum § 5.4. That the forum selection clause applies, however, does not mean that the Agreement's arbitration clause is vitiated. Rather, as noted above, the First Amendment and Second Addendum contain only limited merger clauses, which provide that "all terms and conditions set forth in the Agreement shall remain unmodified, binding, and in full force and effect" *unless* they are "expressly amended and modified by th[e] [First Amendment or Second Addendum]," and they do not expressly modify the Agreement's arbitration clause. First Amendment § 4.1; Second Addendum § 5.1. In sum, nothing in the First Amendment or Second Addendum supersedes or otherwise voids the arbitration provision in Section 15.1 of the Agreement.

Turning to Plaintiff's second argument, the Court does not agree that the Agreement's forum selection and arbitration clauses cannot be reconciled. *See* Opp. at 7-8. Under New York law, when "two seemingly conflicting contract provisions reasonably can be reconciled, a court is required to do so and to give both effect." *HSBC Bank USA v. Nat'l Equity Corp.*, 719

N.Y.S.2d 20, 22 (1st Dep't 2001) (citation omitted).  A court should avoid interpretations of contracts that render terms of a contract "meaningless or useless." *Thomas Crimmins Contracting Co. v. City of New York*, 542 N.E.2d 1097, 1100 (N.Y. 1989).  Instead, "the contract 'should be construed so as to give full meaning and effect to all of its provisions'" and "[a]n interpretation of a contract that has the effect of rendering at least one clause superfluous or meaningless is not preferred and will be avoided if possible." *LaSalle Bank Nat'l Ass'n v. Nomura Asset Cap. Corp.*, 424 F.3d 195, 206 (2d Cir. 2005) (ellipsis omitted) (quoting *Shaw Grp. Inc. v. Triplefine Int'l Corp.*, 322 F.3d 115, 121, 124 (2d Cir. 2003)).

  The Agreement's arbitration provision is broad and mandatory.  It provides that "[a]ny dispute that has not otherwise settled . . . shall then be settled by final binding arbitration" under the FAA and in accordance with the AAA Commercial Rules.  Agreement § 15.1.  The Agreement's forum selection clause, in contrast, designates New York federal and state courts for "any action, proceeding, or other litigation" based on or related to the Agreement.  *Id.* § 16.2(b) (capitalization omitted).  These provisions may be reasonably construed in a complementary manner to give them full meaning and effect – namely, they provide that any dispute shall be resolved through arbitration while any action, proceeding, or other litigation related to the Agreement, such as to compel arbitration or to confirm or vacate an arbitration award, shall be filed in a New York court.  Plaintiff's contrary construction, that litigation in New York courts is the exclusive forum for all disputes related to the Agreement, completely reads the arbitration clause out of the Agreement and, therefore, "is not preferred and will be avoided." *LaSalle Bank Nat'l Ass'n*, 424 F.3d at 206 (citation omitted); *see Schwartz v. Sterling Ent. Enters., LLC*, No. 21-cv-01084 (PAC), 2021 WL 4321106, at *6 (S.D.N.Y. Sept. 23, 2021) (reconciling arbitration and forum selection clauses in favor of finding an agreement to arbitrate

10

because the plaintiff's "strained reading would not comport with the requirement to reconcile apparent conflicts where reasonably possible, as it would completely read [the arbitration clause] out of the [contract]").

The Court finds *Inventory Generation Inc. v. Proventure Capital Funding LLC*, No. 22-cv-10529 (PAE), 2023 WL 2609344 (S.D.N.Y. Mar. 23, 2023), persuasive. In *Inventory Generation*, the contract between the parties contained an arbitration provision that stated that "[a]ny action or dispute related to this Agreement . . . including, but not limited to issues of arbitrability, will, at the option of any party to such action or dispute, be determined by arbitration before a single arbitrator." *Id.* at *3. A forum selection clause in the same agreement stated that "[a]ny litigation relating to this Agreement . . . must be commenced and maintained in any court located in" certain New York counties. *Id.* at *4. The court found these provisions to be complementary because they dealt with "action or dispute" on the one hand and "litigation" relating to the agreement on the other. *Id.* at *7 (emphasis omitted). The court reasoned that "[t]he provisions . . . leave room for litigation as to court proceedings ancillary to arbitration – such as to compel arbitration if such is resisted, as here, or to confirm or vacate an arbitral award. For litigation within those parameters, the Agreement's forum selection provisions govern." *Id.* Here, too, the arbitration clause covers the settlement of "[a]ny dispute," Agreement § 15.1, in contrast to an "action, proceeding, or other litigation" that must be filed in New York courts, *id.* § 16.2(b) (capitalization omitted).

That the Agreement's forum selection clause speaks in terms of "exclusive" jurisdiction does not change the analysis. In *Glencore Ltd. v. Degussa Engineered Carbons LP*, 848 F. Supp. 2d 410, 414 (S.D.N.Y. 2012), for example, the arbitration clause stated that "any claim or controversy arising out of, or relating to this contract or breach thereof shall be settled by

11

arbitration" subject to the AAA Commercial Rules.  The court found that a separate clause, which provided that "any legal actions taken to enforce any rights or obligations under the Agreement must be properly filed in a competent court," *id.* at 432, was "readily reconciled" because it did not undermine the clear mandate of arbitration, *id.* at 433.  It reasoned that the latter referred to the filing of lawsuits rather than where claims were to be "resolved" or "settled," which was through arbitration.  *Id.* (emphasis omitted).  The court therefore rejected the argument, like Plaintiff's here, that the contact was "internally contradictory and incapable of being reconciled," and it granted the petition to compel arbitration.  *Id.* at 435.

Similarly, in *BRM Trades, LLC v. All-Ways Forwarding International, Inc.*, No. 21-cv-07151 (VB), 2022 WL 2788087, at *8 (S.D.N.Y. July 15, 2022), the court reconciled an arbitration clause, which provided that all "disputes" shall be settled by arbitration, with a forum selection clause, which provided that New York courts "shall have exclusive jurisdiction" over "any suits."  Focusing on "the forum-selection clause's restriction of the [c]ourt's exclusive jurisdiction to 'suits,'" the court read the contract as providing that the parties must "arbitrate their disputes, but that to the extent [the merchant] files a suit in court . . . – for example, to enforce an arbitral award, or to challenge the validity or application of the arbitration agreement – [the carrier] will not challenge either jurisdiction or venue."  *Id.*; *see also Celltrace Commc'ns, Ltd. v. Acacia Rsch. Corp.*, No. 15-cv-04746 (AJN), 2016 WL 3407848, at *1, *4 (S.D.N.Y. June 16, 2016) (reconciling a clause that the parties "irrevocably consent to the exclusive jurisdiction of any New York state or federal court over any suit, action or proceeding arising out of or relating to this Agreement" with a clause that the parties must try to "settle the dispute by formal arbitration," because the former could refer to "subsequent litigation to enforce or

invalidate the arbitration award"), *aff'd in relevant part and vacated on other grounds,* 689 F. App'x 6 (2d Cir. 2017).

Here, the Court reaches the same conclusion as *Glencore Ltd.*, *Celltrace Communications*, and *BRM Trades*.  The Agreement's broad arbitration language regarding settling disputes may be reasonably reconciled with the Agreement providing exclusive jurisdiction to New York courts for purposes of related litigation, such as actions to enforce or vacate an arbitration award in the future.[1]  This construction gives full meaning and effect to the Agreement and avoids rendering either the arbitration clause or the forum selection clause meaningless.  *See LaSalle Bank Nat'l Ass'n*, 424 F.3d at 206.  For all of these reasons, the Court concludes that the Agreement's forum selection clause does not conflict with or displace the arbitration clause in Section 15.1.

With respect to the scope of the arbitration clause, the parties have agreed to arbitrate "any disputes" between them.  Plaintiff does not object – nor could it realistically do so, given the breadth of the arbitration clause – that its current claims against Defendant fall within the definition of "any disputes" between the parties.  The Court need not decide this, however, because the parties have delegated that issue to the arbitrator by incorporating the AAA Commercial Rules into their Agreement.  *See* Agreement § 15.1; *Olin Holdings Ltd. v. Libya*, 73 F.4th 92, 105 (2d Cir. 2023) ("When 'parties explicitly incorporate rules that empower an

---

[1] The cases Plaintiff cites (*see* Opp. at 8-9) involve successive agreements in which a subsequent agreement contradicts an earlier agreement between the parties.  These cases do not analyze whether provisions in a single contract are superfluous or reconcilable, and, here, the Court finds that the arbitration and forum selection clauses in the Agreement are reconcilable.  The Court also finds *Flexport, Inc. v. Western Global Airlines*, No. 19-cv-06383 (PGG), 2020 WL 7028908, at *5-6 (S.D.N.Y. Nov. 30, 2020), distinguishable because there, unlike here, both the arbitration and forum selection clauses provided conflicting mandatory exclusive jurisdiction over "any disputes" and "all disputes," respectively.

arbitrator to decide issues of arbitrability, the incorporation serves as clear and unmistakable evidence of the parties' intent to delegate such issues to an arbitrator.'" (citation omitted)); *Contec Corp. v. Remote Sol., Co., Ltd.*, 398 F.3d 205, 208-11 (2d Cir. 2005) (holding that adoption of the AAA Commercial Rules delegated arbitrability determinations to the arbitrator).

For all of these reasons, the Court grants Defendant's motion to compel arbitration.

## CONCLUSION

Defendant's motion to compel arbitration is GRANTED and the case shall be stayed while the parties arbitrate. *See Katz v. Cellco P'ship*, 794 F.3d 341, 346 (2d Cir. 2015) (explaining that a stay rather than dismissal comports with the FAA's underlying policy of moving an arbitrable dispute to arbitration "as quickly and easily as possible" (quoting *Moses H. Cone*, 460 U.S. at 22)).

IT IS HEREBY ORDERED that the parties shall, on or by **April 19, 2024**, file a joint letter updating the Court on the status of the arbitration.

The Clerk of Court is respectfully directed to terminate the motion at ECF No. 13 and mark this case as STAYED.

Dated: October 19, 2023
      New York, New York                      SO ORDERED.

*Jennifer Rochon*
JENNIFER L. ROCHON
United States District Judge