# EXHIBIT

# A

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

```
------------------------------------------------------------ x
```
In re                                     :        **Chapter 11**
                                          :
**SUNLIGHT FINANCIAL HOLDINGS INC.,**     :        **Case No. 23-11794 (MFW)**
*et al.*,                                 :
                                          :
        Debtors.[1]                       :        **(Jointly Administered)**
                                          :
                                          :        **Re: Docket No. 17, 106, and 181**
```
------------------------------------------------------------ X
```

## ORDER (I) APPROVING DISCLOSURE STATEMENT AND (II) CONFIRMING JOINT PREPACKAGED CHAPTER 11 PLAN OF REORGANIZATION OF SUNLIGHT FINANCIAL HOLDINGS INC. AND ITS AFFILIATED DEBTORS

Upon the filing by Sunlight Financial Holdings Inc. and its debtor affiliates, as debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "**Debtors**")[2] of the *Amended Joint Prepackaged Chapter 11 Plan of Reorganization of Sunlight Financial Holdings Inc. and its Affiliated Debtors* (Docket No. 181) (as amended, modified or supplemented, the "**Plan**") which is attached hereto as **Exhibit A**, and the *Disclosure Statement for Joint Prepackaged Chapter 11 Plan of Reorganization of Sunlight Financial Holdings Inc. and Its Affiliated Debtors* (Docket Nos. 17 & 106) (as amended, modified, or supplemented, the "**Disclosure Statement**"); and the Court having entered the *Order (I) Scheduling a Combined Hearing on (A) the Adequacy of the Disclosure Statement and (B) Confirmation of Prepackaged Plan, (II) Approving Solicitation Procedures, (III) Establishing Procedures for Objections,*

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are: Sunlight Financial Holdings Inc. (9566), SL Financial Holdings Inc. (2472), SL Financial Investor I LLC (N/A), SL Financial Investor II LLC (1453), and Sunlight Financial LLC (3713). The Debtors' mailing and service address is 101 North Tryon Street, Suite 900, Charlotte, North Carolina 28246.

[2] Capitalized terms used in this Confirmation Order but not otherwise defined shall have the same meaning as in the Plan, unless the context otherwise requires.

*(IV) Approving Form and Notice of Combined Hearing, (V) Establishing Procedures for Assumption of Executory Contracts or Unexpired Leases, (VI) Extending the Time for the Debtors to File Schedules and Statements, (VII) Conditionally Waiving the Meeting of Creditors, and (VIII) Granting Related Relief* (Docket No. 94) (the "**Scheduling Order**"); and upon the *Notice of (I) Commencement of Chapter 11 Bankruptcy Cases, (II) Combined Hearing on Disclosure Statement and Confirmation of Joint Prepackaged Chapter 11 Plan, and Related Matters, (III) Objection Deadline and Procedures for Filing Objections to the Disclosure Statement and Joint Prepackaged Plan, and (IV) Summary of Joint Debtors' Joint Prepackaged Chapter 11 Plan* (Docket No. 95) (the "**Combined Notice**"); and the Debtors having filed the plan supplement (as amended, modified or supplemented (Docket No. 18) the "**Plan Supplement**") which included, among other things, the New Corporate Governance Documents, the Investment Agreement, various documents related to the Amended CRB Agreements, and certain of the other Plan Documents (as defined below); and the Debtors' having filed the following:

(A) *Declaration of Matthew R. Potere in Support of Debtors' Chapter 11 Petitions and First Day Relief* on October 30, 2023 (Docket No. 5);

(B) *Declaration of Matthew J. Moss of Guggenheim Securities, LLC, in Support of Confirmation of the Joint Prepackaged Chapter 11 Plan of Sunlight Financial Holdings Inc. and Its Affiliated Debtors* on October 31, 2023 (Docket No. 19);

(C) *Declaration of Matthew R. Potere in Support of the Debtors' Scheduling Motion* on October 31, 2023 (Docket No. 21);

(D) *Affidavit of Service of Jeriad Paul* on behalf of Omni Agent Solutions, Inc. on October 31, 2023 (Docket No. 41);

(E) *Declaration of Jeriad R. Paul on behalf of Omni Agent Solutions, Inc. Regarding*

*Solicitation of Votes and Tabulation of Ballots Cast on the Joint Prepackaged Chapter 11 Plan of Reorganization of Sunlight Financial Holdings Inc. and its Affiliated Debtors* filed on November 1, 2023 (Docket No. 42) (the "**Voting Certification**");

(F) *Affidavit of Service of Randy Lowry* on behalf of Omni Agent Solutions, Inc., filed on November 1, 2023 (Docket No. 90);

(G) *Affidavit of Service of Randy Lowry* on behalf of Omni Agent Solutions, Inc., filed on November 7, 2023 (Docket No. 108);

(H) *Proofs of Publication for the Notice of Commencement of Chapter 11 Bankruptcy Cases and Combined Hearing on Disclosure Statement and Confirmation of Joint Prepackaged Chapter 11 Plan* filed on November 8, 2023 (Docket No. 109);

(I) *Affidavit of Supplemental Service of Randy Lowry* on behalf of Omni Agent Solutions, Inc., filed on November 10, 2023 (Docket No. 114);

(J) *Affidavit of Supplemental Service of Randy Lowry* on behalf of Omni Agent Solutions, Inc., filed on November 16, 2023 (Docket No. 125);

(K) *Declaration of John Walsh in Support of Confirmation of the Joint Prepackaged Chapter 11 Plan of Reorganization of Sunlight Financial Holdings Inc. and its Affiliated Debtors* on December 1, 2023 (Docket No. 183);

(L) *Declaration of Neal P. Goldman in Support of Confirmation of Joint Prepackaged Chapter 11 Plan of Reorganization of Sunlight Financial Holdings Inc. and its Affiliated Debtors* on December 1, 2023 (Docket No. 184); and

(M) *Declaration of Matthew R. Potere in Support of Confirmation of Joint Prepackaged Chapter 11 Plan of Reorganization of Sunlight Financial Holdings Inc. and its Affiliated Debtors* on December 1, 2023 (Docket No. 185),

((A) through (M), collectively, the "**Confirmation Documents**"); and this Court having held a hearing on December 5, 2023, to consider, among other things, approval of the Disclosure Statement and confirmation of the Plan (the "**Combined Hearing**"); and upon the Confirmation Documents, and the evidence adduced at, and the record of, the Combined Hearing; and upon the record of these Chapter 11 Cases; and after due deliberation:

**THIS COURT HEREBY FINDS:**[3]

A.      This Court has jurisdiction over these Chapter 11 Cases pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated as of February 29, 2012.  Venue of these proceedings and the Chapter 11 Cases in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2) and this Court may enter a final order hereon under Article III of the United States Constitution.

B.      The Disclosure Statement provided Cross River Bank ("**CRB**"), the sole holder of Claims entitled to vote on the Plan, with adequate information to make an informed decision as to whether to vote to accept or reject the Plan in accordance with section 1125(a)(1) of the Bankruptcy Code.

C.      The Disclosure Statement (including all exhibits thereto) and the Combined Notice provided holders of Claims and Interests and other parties in interest with sufficient notice of the injunction, exculpation, and release provisions contained in Article X of the Plan, in satisfaction of the requirements of Bankruptcy Rule 3016(c).

D.      The Debtors have complied with the Scheduling Order.  Notice of the

---

[3] To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such, and to the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

Combined Hearing was proper, timely, and adequate in accordance with the Scheduling Order and in compliance with the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules. No other or further notice is required.

E.      Each of the Debtors has met the burden of proving that the Plan satisfies or complies with all applicable provisions of sections 1122, 1123, 1125, 1126, and 1129 of the Bankruptcy Code by a preponderance of the evidence.

F.      The principal purpose of the Plan is not the avoidance of taxes or the avoidance of the application of section 5 of the Securities Act.

G.      Each of the Debtors solicited the Plan in good faith and in compliance with applicable provisions of the Bankruptcy Code and Bankruptcy Rules. All affected parties in interest had due and adequate notice and opportunity to participate in the Plan confirmation process and the Combined Hearing. Any modifications to the Plan do not require additional disclosure or re-solicitation of votes.

H.      The Debtors, the Released Parties, and the Exculpated Parties have acted in good faith in all aspects with respect to the Plan, including within the meaning of section 1125(e) of the Bankruptcy Code, and the Debtors proposed the Plan in good faith and not by any means forbidden by law. The Plan has been proposed with the legitimate purpose of maximizing the returns available to creditors and other parties in interest. The arm's-length negotiations between, among others, the Debtors, CRB, the Plan Sponsor, and the Consenting Equity Holders, provide independent evidence of the good faith in proposing the Plan.

I.      With respect to each Debtor, votes to accept or reject the Plan have been solicited and tabulated fairly, in good faith, and in a manner consistent with the Bankruptcy Code and the Bankruptcy Rules.

J. The holder of Claims in Class 3 (CRB Claims) is impaired under the Plan and has voted to accept the Plan in the numbers and amounts required by section 1126(d) of the Bankruptcy Code.

K. The Debtors are insolvent. Except as provided pursuant to Section 4.7 of the Plan, Holders of Interests are not entitled to any distribution under the Plan on account of such Interests.

L. The Plan does not discriminate unfairly and is fair and equitable with respect to the Classes that are impaired and are deemed to reject the Plan.

M. The disclosures made in the Plan Supplement comply with section 1129(a)(5) of the Plan Supplement to the extent applicable.

N. As set forth below, the releases, injunctions, and exculpations in Article X of the Plan are appropriate under applicable law.

(a) **Releases by Debtors.** For the reasons set forth in the Confirmation Documents, the releases being provided by the Debtors in favor of the Released Parties pursuant to Section 10.7(a) of the Plan are (i) fair, equitable, and reasonable, (ii) integral elements of the Plan and resolution of the Chapter 11 Cases, without which the Debtors' ability to confirm the Plan would be seriously impaired, and (iii) in the best interests of the Debtors, the Estates, and creditors. Accordingly, such releases constitute a sound exercise of the Debtors' business judgment and, to the extent applicable, otherwise satisfy the standard articulated in *In re Master Mortg. Inv. Fund, Inc.*, 168 B.R. 930 (Bankr. W.D. Mo. 1994).

(b) **Releases by Releasing Parties.** For the reasons set forth in the Confirmation Documents, the releases being provided by the Releasing Parties in favor of the Released Parties pursuant to Section 10.7(b) of the Plan are appropriate.

(c) **Exculpation.** For the reasons set forth in the Confirmation Documents, the exculpations in favor of the Exculpated Parties in Section 10.8 of the Plan are appropriately tailored to the circumstances of these Chapter 11 Cases, and no Exculpated Party is being exculpated for acts or omissions that constitutes actual fraud, willful misconduct, or gross negligence.

      (d)    **Injunction.**  For the reasons set forth in the Confirmation Documents, the injunction set forth in Section 10.9 of the Plan is appropriate in that such injunction is necessary to implement, preserve, and enforce the releases and exculpations set forth in Article X of the Plan, and is narrowly tailored to achieve such purpose.

O.      The form of the ballot (the "**Ballot**") provided to and used by the holder of Claims in Class 3 to vote on the Plan adequately addressed the particular needs of the Chapter 11 Cases and was appropriate.

P.      The settlements and compromises incorporated in the Plan (including, without limitation, the settlement and compromise of Claims, Interests, and controversies relating to the contractual, legal, equitable, and subordination rights that each creditor or Interest holder may have with respect to any Claim or Interest or any distribution to be made on account of an Allowed Claim or Allowed Interest), and the settlements and compromises set forth in the Restructuring Support Agreement and the TRA Amendment (which are adopted by way of the Plan) are in the best interests of the Debtors, the Estates, the Debtors' creditors, any Interest holders, and other parties in interest, are both fair and equitable, and are within the range of reasonableness.

Q.      The Claims and Interests placed in each Class are substantially similar to other Claims and Interests in each such Class.  Valid business, factual, and legal reasons exist for separately classifying the various Classes of Claims and Interests created under the Plan, and the Debtors' classification scheme does not unfairly discriminate between holders of Claims or Interests.  Furthermore, the Plan provides for the same treatment by the Debtors for each Claim or Interest in each respective Class, unless the holder of a particular Claim or Interest has agreed to a less favorable treatment of such Claim or Interest.

**IT IS HEREBY ORDERED THAT:**

**A.      Approval of the Disclosure Statement**

1.      The Disclosure Statement is approved as having adequate information as contemplated by section 1125(a)(1) of the Bankruptcy Code.  All objections or reservations of rights in respect of the Disclosure Statement that have not been withdrawn or resolved before the Combined Hearing are overruled.

**B.      Confirmation of the Plan**

2.      The Plan satisfies or complies with all applicable provisions of sections 1122, 1123, 1125, 1126, and 1129 of the Bankruptcy Code and is confirmed pursuant to section 1129 of the Bankruptcy Code.  The Debtors and the Reorganized Debtors (as applicable) are authorized to take all actions required to effectuate the Plan and the transactions contemplated therein.

3.      All objections to or reservations of rights in respect of the Plan that have not been withdrawn or resolved before the Combined Hearing are overruled.

4.      The terms of the Plan, the agreements, instruments, and other applicable documents contained in the Plan Supplement (the "**Plan Supplement Agreements**"), the TRA Amendment, the Restructuring Support Agreement, the Plan Documents, and all the exhibits to all of the foregoing are hereby approved by the Court and are binding.  All other relevant and necessary documents executed or to be executed in connection with the transactions contemplated by the Plan shall be effective and binding as of the Effective Date.  The failure to specifically include or refer to any particular article, section, or provision of the Plan, the Plan Supplement Agreements, the TRA Amendment, the Restructuring Support Agreement, the other Plan Documents, or any related document in this Confirmation Order does not diminish or impair the effectiveness or enforceability of such article, section, or provision.

5.     Except as otherwise provided in section 1141(d)(3) of the Bankruptcy Code, and subject to the occurrence of the Effective Date, on and after the entry of this Confirmation Order, the provisions of the Plan shall bind every holder of a Claim against or Interest in the Debtors and inure to the benefit of and be binding on such holder's respective successors and assigns, regardless of whether the Claim or Interest of such holder is impaired under the Plan and whether such holder has accepted the Plan.

6.     Except as otherwise set forth in the Plan (including, without limitation, sections 3.4 and 7.1 of the Plan), Holders of Claims in Class 1, 2, or 4 of the Plan other than Claims arising from the rejection of an executory contract or unexpired lease shall not be subject to any claims-resolution process in the Bankruptcy Court in connection with their Claims. Except as otherwise set forth in the Plan, Holders of Claims in Class 1, 2, or 4 of the Plan that are not subject to the Disputed Claims process set forth in Article VII of the Plan shall retain all of their rights under applicable non-bankruptcy law to pursue their Claims against the Debtors or Reorganized Debtors in any forum with jurisdiction over the parties, and all parties shall retain any and all rights, claims, causes of action, defenses, and remedies with respect thereto. Furthermore, from and after the Effective Date, the Reorganized Debtors may satisfy, dispute, settle, or otherwise compromise any such Claims without approval of the Bankruptcy Court.

7.     Each of the settlements and compromises incorporated into the Plan, including, without limitation, the settlements and compromises set forth in the Restructuring Support Agreement and the TRA Amendment, which are adopted by way of the Plan, satisfies the requirements of section 1129 of the Bankruptcy Code and Bankruptcy Rule 9019 and are approved and shall be effective immediately and binding on all parties in interest. The Plan shall be deemed a valid motion to approve the good faith compromise and settlement of such settlements and

compromises pursuant to Bankruptcy Rule 9019 and section 1123(b)(3) of the Bankruptcy Code.

8.      This Confirmation Order constitutes all approvals and consents required, if any, by the laws, rules, or regulations of any state or any other governmental authority with respect to the implementation or consummation of the Plan and any other acts that may be necessary or appropriate for the implementation or consummation of the Plan.

9.      Subject only to payment of any applicable filing fees under applicable non-bankruptcy law, each federal, state, commonwealth, local, foreign, or other Governmental Unit is authorized to accept for filing and/or recording any and all documents, mortgages, and instruments necessary or appropriate to effectuate, implement, or consummate the transactions contemplated by the Plan and this Confirmation Order.  No such Governmental Unit may require any payment that is the subject of section 12.1 of the Plan in respect of any filing or recording for such purpose.

10.      To the maximum extent permitted by section 1145 of the Bankruptcy Code, the Consenting Creditor New Equity to CRB on account of the Allowed CRB Claims and the Plan Sponsor New Equity to the Plan Sponsor, issued under the Plan is exempt from registration under applicable securities laws.

11.      The amendments and modifications to the Plan since the filing thereof, including as may be reflected in the Plan and this Confirmation Order, are approved in accordance with section 1127(a) of the Bankruptcy Code and Bankruptcy Rule 3019(a).

12.      The assumption of executory contracts and unexpired leases as set forth in Article VIII of the Plan is approved.  As set forth in section 8.1 of the Plan, all prepetition executory contracts and unexpired leases not otherwise assumed or rejected shall be assumed by the applicable Reorganized Debtor as of the Effective Date, unless such executory contract or unexpired lease (a) was previously assumed or rejected by the Debtors pursuant to a Final Order

of the Bankruptcy Court, (b) previously expired or terminated pursuant to its own terms or by agreement of the parties thereto, (c) is the subject to a motion to reject filed by the Debtors on or before the Effective Date, or (d) is specifically designated as a contract or lease to be rejected on the Schedule of Rejected Contracts.

13.    For the avoidance doubt, pursuant to Bankruptcy Rule 3020(c)(1), the following provisions in the Plan are hereby approved and will be effective immediately on the Effective Date without further order or action by the Court, any of the parties to such release, or any other entity: (a) the Plan Injunction (section 10.6); (b) the Releases by the Debtors (section 10.7(a)); (c) the Releases by Releasing Parties (section 10.7(b)); (d) the Exculpation (Section 10.8); and (e) the Injunction Related to Releases and Exculpation (section 10.9).

14.    The Debtors and Reorganized Debtors, as applicable, are hereby authorized without further notice to or action, order or approval of the Court to enter into, perform under, and consummate the transactions contemplated by the Investment Agreement, the New Corporate Governance Documents, the Amended CRB Agreements, the Convertible Notes, and the Note Purchase Agreement, and shall execute and deliver on the Effective Date, as applicable, all agreements, documents, instruments, financing statements, mortgages, security documents, and certificates relating to the Investment Agreement, the New Corporate Governance Documents, the Amended CRB Agreements, the Convertible Notes, the Note Purchase Agreement, and the Note Purchase Option Letter Agreement, as applicable (collectively, the "**Plan Documents**"), in each case that are contemplated to be executed and/or delivered, as applicable, on the Effective Date. All such documents are approved, incorporated in the Plan and this Confirmation Order by reference, and shall become effective in accordance with their terms and the Plan. Confirmation of the Plan shall be deemed approval of all obligations to be incurred and fees paid or to be paid

by the Debtors or the Reorganized Debtors in connection with the Plan Documents.

15.    On the Effective Date, the Reorganized Debtors shall enter into the Plan Documents (to the extent such Plan Documents have not already been executed) and the Plan Documents shall, subject to the satisfaction of the conditions thereof, constitute legal, valid, binding, and authorized joint and several obligations of the applicable Reorganized Debtors, enforceable in accordance with their respective terms, and such obligations shall not be, and shall not be deemed to be, enjoined or subject to discharge, impairment, release, avoidance, recharacterization, or subordination under applicable law, the Plan, or this Confirmation Order or on account of the confirmation or consummation of the Plan.  On the Effective Date, all of the Liens and security interests to be granted on the Effective Date in accordance with the Plan Documents shall, as applicable, (a) be legal, binding, enforceable, and automatically perfected Liens on, and security interests in, the collateral granted thereunder in accordance with the terms of the Plan Documents, as applicable, without (i) further approval of the Court, (ii) any approvals, consents or waivers of any other party, or (iii) further corporate, limited liability company or similar action or approval, as applicable, by any Debtor or Reorganized Debtor, (b) be deemed automatically attached and perfected on the Effective Date, subject only to such Liens and security interests as may be permitted under the Plan Documents, as applicable, without the necessity of filing or recording any financing statement, assignment, pledge, notice of lien or any similar document or instrument or taking any other action, and (c) not be subject to recharacterization or equitable subordination for any purposes whatsoever and shall not constitute preferential transfers, fraudulent conveyances, or other voidable transfers under the Bankruptcy Code or any applicable non-bankruptcy law.  The guarantees, pledges, liens, and other security interests granted to secure the obligations arising under the Plan Documents including without limitation under the Amended

CRB Agreements, the Convertible Notes, and the Note Purchase Agreement, as applicable, have been granted in good faith, for legitimate business purposes, and for reasonably equivalent value, shall be deemed to not constitute a fraudulent conveyance or fraudulent transfer, shall not otherwise be subject to avoidance, recharacterization, or subordination for any purposes whatsoever, and shall not constitute preferential transfers, fraudulent conveyances, or fraudulent transfers under the Bankruptcy Code or any applicable non-bankruptcy law.

16.     Except as otherwise provided in the Plan, or in any contract, instrument, release, or other agreement or document created pursuant to the Plan, including the Plan Documents, on the Effective Date and concurrently with the applicable distributions made pursuant to the Plan and, in the case of a Secured Claim, satisfaction in full of the portion of the Secured Claim that is Allowed as of the Effective Date, all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Estates shall be fully released and discharged, and all of the right, title, and interest of any holder of such mortgages, deeds of trust, Liens, pledges, or other security interests shall revert to the Reorganized Debtors and their successors and assigns.  All holders of Secured Claims are directed to cooperate with the Debtors or the Reorganized Debtors, as the case may be, in implementing this paragraph and any administrative details relating thereto.

17.     The Debtors shall cause to be served a notice of the entry of this Confirmation Order and occurrence of the Effective Date (the "**Notice of Effective Date**") upon (a) all parties listed in the creditor matrix maintained by Omni Agent Solutions, Inc., and (b) such additional persons and entities as deemed appropriate by the Reorganized Debtors, no later than five (5) Business Days after the Effective Date.

**C.      Professional Fee Claims**

18.      All Professional Persons seeking approval by the Bankruptcy Court of compensation for services rendered or reimbursement of expenses incurred through and including the Effective Date under sections 327, 328, 330, 331, or 503(b)(2) of the Bankruptcy Code shall file, on or before the date that is thirty (30) calendar days after the Effective Date, their respective applications (collectively, the "**Final Fee Applications**") for final allowances of compensation for services rendered, and reimbursement of expenses incurred between the Petition Date and the Effective Date and serve such applications upon the following parties (collectively, the "**Notice Parties**"): (a) the attorneys for the Debtors, (i) Weil, Gotshal & Manges LLP, 767 Fifth Avenue, New York, New York 10153 (Attn: Ray C. Schrock, Esq. (ray.schrock@weil.com), Alexander W. Welch, Esq. (alexander.welch@weil.com), and Alejandro Bascoy, Esq. (alejandro.bascoy@weil.com)), and (ii) Richards, Layton & Finger, P.A., One Rodney Square, 920 North King Street, Wilmington, DE 19801 (Attn: Daniel J. DeFranceschi, Esq. (defranceschi@rlf.com) and Zachary I. Shapiro, Esq. (shapiro@rlf.com)); (b) the Office of the United States Trustee for the District of Delaware, 844 N. King Street, Wilmington, Delaware 19801 (Attn: Joseph Cudia, Esq. (joseph.cudia@usdoj.gov)); (c) attorneys for CRB, Paul, Weiss, Rifkind, Wharton & Garrison LLP, 1285 Avenue of the Americas, New York, NY 10019 (Attn: Alice Eaton, Esq. (aeaton@paulweiss.com) and Kyle Kimpler, Esq. (kkimpler@paulweiss.com)) and Young Conaway Stargatt & Taylor LLP, Rodney Square, 1000 North King Street, Wilmington, Delaware 19801 (Attn: Pauline K Morgan, Esq. (pmorgan@ycst.com) and Andrew Magaziner, Esq. (amagaziner@ycst.com)); and (d) attorneys for the Plan Sponsor, Locke Lord LLP, Brookfield Place, 200 Vesey Street, New York, NY 10281 (Attn: Aaron Smith Esq. (asmith@lockelord.com) and Michael Malfettone, Esq. (michael.malfettone@lockelord.com)).

Any objection to any Final Fee Application must be filed with this Court, and served upon the applicable Professional Person and the other Notice Parties, so as to be actually received no later than 4:00 p.m. (prevailing Eastern Time) on the date that is twenty-one (21) calendar days after the filing of the applicable Final Fee Application.

**D.     United States**

19.     Notwithstanding any provision in the Plan, the Plan Supplement, this Confirmation Order or other related Plan documents (collectively, "**Documents**"):

> Nothing discharges or releases the Debtors, the Reorganized Debtors, or any non-debtor from any right, claim, liability, defense or cause of action of the United States or impairs the ability of the United States to pursue any right, claim, liability, defense, or cause of action against any Debtor, Reorganized Debtor or non-debtor. Contracts, purchase orders, agreements, leases, covenants, guaranties, indemnifications, operating rights agreements or other interests of or with the United States shall be, subject to any applicable legal or equitable rights or defenses of the Debtors or Reorganized Debtors under applicable non-bankruptcy law, paid, treated, determined and administered in the ordinary course of business as if the Debtors' bankruptcy cases were never filed and the Debtors and Reorganized Debtors shall comply with all applicable non-bankruptcy law. All rights, claims, liabilities, defenses or causes of action, of or to the United States shall survive the Chapter 11 Cases as if they had not been commenced and be determined in the ordinary course of business, including in the manner and by the administrative or judicial tribunals in which such rights, claims, liabilities, defenses or causes of action would have been resolved or adjudicated if the Chapter 11 Cases had not

been commenced; *provided*, that nothing in the Documents shall alter any legal or equitable rights or defenses of the Debtors or the Reorganized Debtors under non-bankruptcy law with respect to any such claim, liability, or cause of action. Without limiting the foregoing, for the avoidance of doubt, nothing shall: (i) require the United States to file any proofs of claim or administrative expense claims in the Chapter 11 Cases for any right, claim, liability, defense, or cause of action; (ii) affect or impair the exercise of the United States' police and regulatory powers against the Debtors, the Reorganized Debtors or any non-debtor; (iii) be interpreted to set cure amounts or to require the United States to novate or otherwise consent to the transfer of any federal or state contracts, purchase orders, agreements, leases, covenants, guaranties, indemnifications, operating rights agreements or other interests; (iv) affect or impair the United States' rights and defenses of setoff and recoupment, or ability to assert setoff or recoupment against the Debtors or the Reorganized Debtors and such rights and defenses are expressly preserved; (v) constitute an approval or consent by the United States without compliance with all applicable legal requirements and approvals under non-bankruptcy law; or (vi) relieve any party from compliance with all licenses and permits issued by governmental units in accordance with non-bankruptcy law.

**E.** **Securities and Exchange Commission**

20. Notwithstanding any language to the contrary in the Disclosure Statement, Plan and/or Confirmation Order, no provision shall (i) preclude the United States Securities and Exchange Commission ("**SEC**") from enforcing its police or regulatory powers; or, (ii) enjoin, limit, impair, or delay the SEC from commencing or continuing any claims, causes of action,

proceeding (other than any derivative claim, action or proceeding of or released by the Debtors) or investigations against any non-debtor person or non-debtor entity in any forum; *provided, however*, that the foregoing shall in no way limit the exculpations and protections provided for under section 1125(e) of the Bankruptcy Code or set forth in section 10.8 of the Plan.

**F.       No Effect on Governmental Regulatory and Enforcement Authority**

21.    In respect of the Responding States,[4] nothing in this Confirmation Order or the Plan or related documents discharges, releases, precludes, or otherwise bars: (a) any liability to any Responding State that is not a Claim; (b) any Claim of a Responding State arising on or after the Confirmation Date; (c) any liability to a Responding State under police and regulatory statutes or regulations arising prior to and after the Confirmation Date (except any Subordinated Interest); or (d) any liability to a Responding State (other than any derivative claim released by the Debtors) on the part of any Person other than the Debtors or Reorganized Debtors; provided, however, that the foregoing shall in no way limit the exculpations and protections provided for under section 1125(e) of the Bankruptcy Code or set forth in section 10.8 of the Plan.  Nor shall anything in this Confirmation Order or the Plan enjoin or otherwise bar a Responding State from asserting or enforcing, outside this Court, any liability described in the preceding sentence, including by exercising police powers authority exempt from the Bankruptcy Code's automatic stay under section 362(b)(4) of the Bankruptcy Code.

---

[4] "**Responding States**" means, Connecticut, Georgia, Illinois, Indiana, Kansas, Kentucky, Michigan, Missouri, Minnesota, North Carolina, Ohio, Pennsylvania, Rhode Island, South Carolina, Tennessee, Texas, Virginia, Washington, West Virginia and Wisconsin.

22.    Further, nothing in this Confirmation Order or the Plan or related documents, with respect to any Responding State: (a) authorizes the transfer or assignment of any governmental (i) license, (ii) permit, (iii) registration, (iv) authorization or (v) approval, or the discontinuation of any obligation thereunder, without compliance with all applicable legal requirements and approvals under police or regulatory law; (b) shall relieve any entity from any obligation to address or comply with information requests, investigations, or inquiries from any Responding State; (c) shall affect any setoff or recoupment rights of any Responding State; or (d) divests any tribunal of any jurisdiction it may have under police or regulatory law to interpret this Confirmation Order or the Plan or to adjudicate any defense asserted under this Confirmation Order or the Plan.  Further, the injunction provisions and releases (other than any derivative claims released by the Debtors) set forth under the Plan are not intended to and shall not be construed to bar any Responding State from, following the entry of this Confirmation Order, pursuing regulatory or enforcement action.

### G.    Florida Litigation

23.    Notwithstanding anything contained in the Plan or this Confirmation Order to the contrary, neither the Plan nor this Order releases any of the Debtors' current or former directors, officers, members and managers from direct claims brought by SL Investor III LLC, Biscayne Bay Sunlight Holdings, LLC, and Neil Z. Auerbach or bars such claims in any way.

### H.    Silicon Valley Bank

24.    For the avoidance of doubt and to the extent provided for in those certain agreements between the Debtors and Silicon Valley Bank, a division of First-Citizens Bank & Trust Company ("**SVB**"), all obligations of the Debtors in connection with the letters of credit, corporate credit card program, and other bank services products issued by SVB

are secured by cash in certain segregated blocked accounts at SVB, and such cash is and shall continue to be SVB's collateral notwithstanding any other provision in the Plan. To the extent provided for in the SVB Contracts, SVB shall be permitted to pay any obligations owed by the Debtors to SVB from such cash pledged to SVB in certain segregated blocked accounts without further order of the Bankruptcy Court or notice to or consent from the Debtors or any other party. SVB shall retain its rights under the SVB Contracts, including, without limitation, offset rights.

**I.   Assumption of Charlotte, North Carolina Office Lease**

25.   That certain Office Lease dated August 30, 2017, by and between Sunlight Financial LLC, as tenant, and CC 101 North Tryon, LLC, as landlord and successor-in-interest to 101 Independence Center, LLC (the "**Landlord**"), as amended by that certain First Amendment to Office Lease dated December 31, 2018, as further amended by that certain Second Amendment to Office Lease dated July 6, 2021, and as further amended by that certain Third Amendment to Office Lease (the "**Amended Office Lease**") shall be deemed and hereby is assumed by Sunlight Financial LLC pursuant to section 365(a) of the Bankruptcy Code, effective as at the date of entry of this Confirmation Order.

26.   Sunlight Financial LLC and the Landlord are hereby authorized to take such additional actions or execute such additional documents as are necessary or appropriate to effectuate the assumption of the Amended Office Lease.

**J.   Fung Plaintiffs' Class Action**

27.   Notwithstanding anything in the Plan to the contrary, including the releases and injunctions set forth in Article X of the Plan, nothing in the Plan or this Confirmation Order shall preclude the rights of Matthew Millunchick, or any other person he shall designate to replace him, in his capacity as lead plaintiff (the "**Lead Plaintiff**") in the securities class action titled

*Fung v. Sunlight Financial Holdings Inc., et al.*, Case No. 1:22- cv-10658-AKH filed in the United States District Court for the Southern District of New York (the "**Fung Action**") from pursuing their Claims, on behalf of themselves and the putative class in the Fung Action (together, with Mr Millunick and any other person he shall designate, the "**Fung Plaintiffs**"), against the Debtors solely as a nominal defendant and solely for the purposes (x) of recovering available insurance proceeds (if any and solely where the applicable policy covers such Claims) over and above any applicable self-insured retention amount, and (y) of seeking discovery from the Debtors in the Fung Action.

28.     Upon the dismissal of the Fung Action as against all directors and officers of the Debtors who are party in the Fung Action as of the date of this Confirmation Order, the Fung Plaintiffs shall be required to dismiss the Fung Action as against the Debtors (without prejudice) on no less favorable terms and the Fung Plainitffs shall not be entitled to proceed against the Debtors for any reason in the Fung Action.

29.     The Fung Plaintiffs shall be bound by the representations and statements made on the record by their counsel at the Confirmation Hearing and the Bankruptcy Court's ruling shall be incorporated by reference in this Confirmation Order.  For the avoidance of doubt, the Debtors shall retain all rights, defenses, claims, and counterclaims in the Fung Action.

**K.      Miscellaneous**

30.     The Challenge Period Termination Date (as defined in the DIP Orders) shall be deemed to have occurred effective upon entry of this Confirmation Order.

31.     Notwithstanding anything in paragraph 19 of this Confirmation Order, paragraph 19 shall exclude and not concern the SEC.

32.     Notwithstanding Bankruptcy Rules 3020(e), 6004(h), 6006(d), and 7062,

the terms and conditions of this Confirmation Order will be effective and enforceable immediately upon its entry and shall not be stayed.  This Confirmation Order is a final order and the period in which an appeal must be filed shall commence upon the entry hereof.  The Plan shall be deemed a valid motion to approve the foregoing.

33.    Except as otherwise provided in the Plan and Plan Documents, all property of the Estates of the Debtors, and any property acquired by the Debtors or Reorganized Debtors under the Plan, will vest in the Reorganized Debtors as of the Effective Date, free and clear of all Claims, liens, charges, other encumbrances, Interests, and other interests.

34.    The Debtors are authorized to consummate the Plan at any time after the entry of this Confirmation Order, subject to the satisfaction or waiver of the conditions precedent to the Effective Date, and all parties in interest shall be entitled to rely upon this Confirmation Order in taking any actions or performing any obligations to consummate the Plan.  Upon consummation of the transactions contemplated by the Plan, the Debtors shall continue without dissolution.

35.    If any or all of the provisions of this Confirmation Order are hereafter reversed, modified, or vacated by subsequent order of the Bankruptcy Court or any other court, such reversal, modification, or vacatur shall not affect the validity of the acts or obligations incurred or undertaken under or in connection with the Plan before the Debtors' or the Reorganized Debtors' receipt of written notice of any such order; nor shall such reversal, modification, or vacatur of this Confirmation Order affect the validity or enforceability of such act or obligation. Notwithstanding any such reversal, modification, or vacatur of this Confirmation Order, any such act or obligation incurred or undertaken pursuant to, and in reliance on, this Confirmation Order before the effective date of such reversal, modification, or vacatur shall be governed in all respects

by the provisions of this Confirmation Order, the Plan, the Plan Documents and all documents, instruments and agreements related thereto or any amendments or modifications thereto.

36.     The failure to include specifically any particular provision of the Plan in this Confirmation Order will not diminish the effectiveness of such provision nor constitute a waiver thereof, it being the intent that the Plan is confirmed in its entirety.

37.     The provisions of the Plan and this Confirmation Order, including any findings of fact and conclusions of law set forth in this Confirmation Order, are non-severable and mutually dependent.

38.     Except as otherwise may be provided in the Plan or herein, notice of all subsequent pleadings in these cases after the Effective Date shall be limited to: (i) the Notice Parties; and (ii) any party known to be directly affected by the relief sought.

39.     This Court shall retain jurisdiction with respect to all matters arising from or related to the implementation of this Confirmation Order and all matters arising in and under, and related to, these Chapter 11 Cases, as set forth in Article XI of the Plan, or pursuant to section 1142 of the Bankruptcy Code.

**Dated: December 5th, 2023**
**Wilmington, Delaware**

                                                 **MARY F. WALRATH**
                                                 **UNITED STATES BANKRUPTCY JUDGE**